**George A. and Mary Rose COLOMBO**

v.

**JOHNS–MANVILLE CORPORATION, et al.**

**PITTSBURGH CORNING CORPORATION**

v.

**UNITED STATES of America.**

**Civ. A. No. 82–0685.**

United States District Court, E.D. Pennsylvania.

Nov. 19, 1984.

---

Justine Gudenas, James R. Moyles, Philadelphia, Pa., for plaintiffs.

Arthur Makadon, Philadelphia, Pa., for Raybestos-Manhattan, Inc.

Byron L. Milner, Bennett, Bricklin, Saltzburg & Fullem, Philadelphia, Pa., for Nicolet, Inc.

Peter P. Liebert, 3rd, Liebert, Short, Fitzpatrick & Lavin, Philadelphia, Pa., for Fibreboard Corp.

Andrew J. Trevelise, Malcolm & Riley, West Chester, Pa., for The Celotex Corp.

Stewart C. Crawford, Swarthmore, Pa., for Delaware Insulation Co.

Francis E. Shields, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Amatex Corp.

Lise Luborsky, Duane, Morris & Heckscher, Philadelphia, Pa., for D.A.R. Industrial Products, Inc.

Robert St. Leger Goggin, Philadelphia, Pa., for Johns-Manville Corp., Johns-Manville Sales Corp.

Edward J. David, Philadelphia, Pa., for Pittsburgh Corning Corp.

Dudley Hughes, Philadelphia, Pa., for Unarco Industries, Inc.

Joseph M. O'Neill, Philadelphia, Pa., for Armstrong World Industries, Inc.

Charles J. Kalinoski, Edward Greer, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for GAF Corp.

Joseph H. Foster, White & Williams, Philadelphia, Pa., for Forty-Eight Insulations, Inc.

Barbara Pennell, Philadelphia, Pa., William J. Spriggs, Washington, D.C., for Eagle-Picher Industries, Inc.

John F. Ledwith, Philadelphia, Pa., for Keene Corp.

Peter J. Lynch, Philadelphia, Pa., for Owens-Illinois Glass Co.

Joan K. Garner, Asst. U.S. Atty., Philadelphia, Pa., Robert N. Kelly, Trial Atty., U.S. Dept. of Justice, Washington, D.C., for U.S.A.

Kevin C. McCullough, Philadelphia, Pa., for Pittsburgh Corning Corp.

Walter L. McDonough, Philadelphia, Pa., for Pacor, Inc.

## OPINION

LOUIS H. POLLAK, District Judge.

### I. INTRODUCTION

Plaintiff George Colombo alleges that, while an employee of the United States at the Philadelphia Naval Shipyard, he was exposed to asbestos-containing products manufactured or distributed by defendants, and that this exposure caused a number of severe injuries. Mr. Colombo alleges that he may have suffered some of his exposure to asbestos particles while working on vessels owned by the United States. Defendant Pittsburgh-Corning's third-party complaint seeks indemnity or contribution from the United States for any damages that plaintiff may recover from Pittsburgh-Corning in this action. Pittsburgh-Corning raises eight distinct legal theories in support of its claim for indemnity or contribution.

The United States has moved to dismiss Pittsburgh-Corning's third-party complaint, or in the alternative for summary judgment. Eagle-Picher Corporation, another defendant, requested leave to file a brief and participate in oral argument in opposition to the United States' motion. That leave was granted because Eagle-Picher has pending in this case a motion for leave to file a third-party complaint substantially identical to Pittsburgh-Corning's third-party complaint.

Briefing the United States' motion involved preparation of considerable amounts of material. The parties requested, and obtained, several extensions and also leave to file reply and surreply memoranda. After completion of briefing, I heard argument on July 5, 1984. At that time, the United States raised an issue concerning the sixth of Pittsburgh-Corning's claims which no party had to that point adequately briefed. Accordingly, I permitted the United States, Pittsburgh-Corning, and Eagle-Picher additional time to file supplemental memoranda on this issue. This opinion resolves the issues raised by the United States' motion. In addition, the Opinion and the accompanying Order necessarily resolve the motions of Pittsburgh-Corning and Raymark for leave to file third-party complaints.

### II. UNITED STATES' MOTION TO DISMISS PITTSBURGH–CORNING'S THIRD–PARTY COMPLAINT, OR FOR SUMMARY JUDGMENT

#### A. *Timeliness of Pittsburgh-Corning's Third-Party Complaint*

■ Federal Rule of Civil Procedure 14(a) permits any defending party to serve a third-party complaint. "The third-party plaintiff need not obtain leave to make the service if he files the third-party complaint not later than ten days after he serves his original answer. Otherwise he must obtain leave on motion upon notice to all parties to the action." Fed.R.Civ.P. 14(a).

Pittsburgh-Corning filed its original answer to plaintiff's complaint on April 16, 1982. Pittsburgh-Corning did not move for leave to file its third-party complaint until June 23, 1983. No party objected to Pittsburgh-Corning's motion, so I granted that motion as unopposed on July 18, 1983. However, this court's Local Rule of Civil Procedure 22(a) provides:

Applications pursuant to F.R.Civ.P. 14 for leave to join additional parties after the expiration of the time limits specified in that rule will ordinarily be denied as untimely unless filed not more than ninety (90) days after the service of the moving party's answer. If it is made to appear, to the satisfaction of the court, that the identity of the party sought to

be joined, or the basis for joinder, could not, with reasonable diligence, have been ascertained within said time period, a brief further extension of time may be granted by the court in the interests of justice.

E.D.Pa.R.Civ.P. 22(a).

The language of Local Rule 22(a) strongly suggests that I erred in granting Pittsburgh-Corning's motion for leave to file an amended complaint when I did so on July 18, 1983. In fact, a three-judge panel of this court, on which I sat, came to precisely that conclusion with respect to an identical motion filed by Pittsburgh-Corning on the same day—June 23, 1983—in a different asbestos case. *Lovallo v. Pittsburgh Corning Corp.*, 99 F.R.D. 627 (E.D.Pa. 1983). Nevertheless, developments since July 18, 1983 lead me to conclude that I should neither (1) vacate my Order of that date permitting the filing of Pittsburgh-Corning's third-party complaint, as untimely filed.

The *Lovallo* panel did not render its Opinion until October 24, 1983. By that time, Pittsburgh-Corning's third-party complaint had been served three months before. *See* Third-Party Return of Summons (filed September 1, 1983). The United States moved to dismiss, or, in the alternative, for summary judgment on, that third-party complaint on September 26, almost a full month before the *Lovallo* decision. The United States' memorandum in support of its motion raised Pittsburgh-Corning's timeliness in a footnote, but the United States argued the merits of its motion for 56 pages supplemented with hundreds of pages of exhibits. The United States having moved, Pittsburgh-Corning had the right to respond, which it did at great length. The parties have devoted enormous effort to filing extensive, thorough, and helpful briefs on the issues raised by the United States' motion. Moreover, at argument the United States did not press

its Local Rule 22(a) argument with any force.

Having improvidently granted Pittsburgh-Corning's motion for leave to file a third-party complaint in the first place, I cannot now responsibly vitiate the massive efforts expended on the merits of the United States' motion by dismissing Pittsburgh-Corning's third-party complaint on a technicality. The rules grant me discretion not to apply Local Rule 22(a)'s strict time requirement in such an instance. Local Rule 22(a) only provides that a motion for leave to file a third-party complaint will "ordinarily" be denied if it comes late. E.D.Pa.R. Civ.P. 22(a). This is no "ordinary" case. Moreover, Federal Rule 6(b) permits me to enlarge the time set by Local Rule 22. Fed.R.Civ.P. 6(b)(2). Accordingly, I will treat Pittsburgh-Corning's third-party complaint as if it were timely filed.

This conclusion creates a question concerning defendants Raymark Industries, Inc. and Eagle-Picher, Inc. On August 4, 1983, Raymark filed a motion for leave to file a third-party complaint identical in all pertinent respects to Pittsburgh-Corning's. On August 22, I granted that motion as uncontested. However, on September 8, 1983, I amended my August 22 Order because, in the interim, I had learned of the pendency of *Lovallo*, a case which appeared to present the same issue.[1] Under the order as amended on September 8, Raymark could file its third-party complaint in this case if the three-judge court in *Lovallo* permitted Raymark to file its identical third-party complaint in this case. Thus, Raymark's motion for leave to file a third-party complaint in this case was keyed to the *Lovallo* decision.

On the other hand, Eagle-Picher's motion for leave to file a third-party complaint against the United States has been keyed to the resolution of the United States' motion to dismiss Pittsburgh-Corning's third-party complaint in this case. Eagle-Picher

---

**1.** On August 25, 1983, three days after I entered the Order granting Raymark's motion for leave to file a third-party complaint, Chief Judge Luongo entered an Order establishing a three-judge panel to consider Raymark's motion for leave to file in *Lovallo*. *Lovallo v. Raymark Industries, Inc.,* Civil Action No. 82–2182 (August 25, 1983).

filed its motion for leave to file a third-party complaint on September 19, 1983. On September 26, the United States filed its motion to dismiss the Pittsburgh-Corning third-party complaint. Eagle-Picher requested that I retain its motion under advisement pending resolution of the motion to dismiss, but that I grant Eagle-Picher leave to brief and argue in opposition to the United States' motion. I granted Eagle-Picher's request.

In my view, the resolution of Raymark's motion for leave to file a third-party complaint, as well as the resolution of Eagle-Picher's parallel motion, should follow the result reached on the United States' motion to dismiss Pittsburgh-Corning's complaint in this case, and not the result reached on Raymark's and Eagle-Picher's motions in *Lovallo*. Ideally, I would have anticipated *Lovallo*'s result before the United States had moved to dismiss Pittsburgh-Corning's complaint. As I think it now prudent to permit Pittsburgh-Corning's complaint to remain filed and to be tested by the United States' motion, I think equity demands equivalent treatment for other third-party plaintiffs in this case.

### B. *Pittsburgh-Corning's Claims*

Pittsburgh-Corning's third-party complaint is divided into eight more-or-less separate claims for relief. I describe them briefly here before addressing the merits of the United States' motion to dismiss, or for summary judgment.[2]

#### 1. *Negligent Failure to Warn of Seller*

Pittsburgh-Corning brings its first claim for contribution under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680. Pittsburgh-Corning alleges that the United States sold raw asbestos to Pittsburgh-Corning which Pittsburgh-Corning incorporated in products it sold in turn to plaintiff's employers. Pittsburgh-Corning alleges that the United States negligently breached its duty to warn potential buyers and users of that raw asbestos of the "potential dangers, hazards and risks of harm from exposure to asbestos." Third-Party Complaint ¶¶ 5–10. Pittsburgh-Corning has taken the position that this claim arises out of an obligation imposed by Pennsylvania law.

#### 2. *Strict Liability of Seller*

Pittsburgh-Corning's second claim is also one for contribution under the Federal Tort Claims Act. In its second claim, Pittsburgh-Corning alleges that, under Pennsylvania law, the United States is strictly liable to it for plaintiff's damages because the United States sold Pittsburgh-Corning an unreasonably dangerous product which Pittsburgh-Corning later resold and to which plaintiff was later exposed.

#### 3. *Implied Warranty of Fitness for Intended Purpose*

Pittsburgh-Corning's third claim alleges that, in the course of selling asbestos to Pittsburgh-Corning, the United States impliedly warranted that asbestos' safety and its fitness for its intended purpose. Pittsburgh-Corning contends that if plaintiff can establish Pittsburgh-Corning's liability

---

**2.** I have benefited greatly in the analysis which follows from Judge Gignoux's recent series of opinions dealing with the United States' motion to dismiss, or for summary judgment on, two "model" third-party complaints filed by defendants in a number of asbestos cases pending in the United States District Court of the District of Maine. The cases in Maine fell into two groups: those brought by plaintiffs who had worked at the Bath Iron Works ("BIW"), a private employer, and those brought by plaintiffs who had worked at the Portsmouth Naval Shipyard ("PNS"), where the employer was the United States. Defendants in the BIW cases filed "Model Third-Party Complaint A" and defendants in the PNS cases filed "Model Third-Party Complaint B." Counsel in the cases pending here have represented that Pittsburgh-Corning's third-party complaint here is substantially identical to "Model Third-Party Complaint B" filed in Maine. *See In re All Maine Asbestos Litigation,* 581 F.Supp. 963 (D.Me.1984) ("Maine I"); *In re All Maine Asbestos Litigation ("BIW Cases"),* 589 F.Supp. 1571 (D.Me.1984) ("*BIW II*"); *In re All Maine Asbestos Litigation ("BIW Cases"),* 589 F.Supp. 1563 (D.Me.1984) ("*BIW III*"); *In re All Maine Asbestos Litigation ("PNS Cases"),* 589 F.Supp. 1571 (D.Me.1984) ("*PNS II*"). *BIW II* is a bench opinion; it is published as an appendix to *BIW III.*

to him, then the United States will have breached this implied warranty and must indemnify Pittsburgh-Corning. This claim arises under contract law and this court allegedly has jurisdiction under 28 U.S.C. § 1346(a)(2), a section of the Tucker Act.

#### 4. *Implied Warranty from Specifications*

Pittsburgh-Corning's fourth claim alleges that all work performed at the Philadelphia Naval Shipyard, during the course of which plaintiff was allegedly exposed to Pittsburgh-Corning's products, complied with specifications promulgated by the United States. Pittsburgh-Corning alleges that, in issuing these specifications, the United States impliedly warranted that asbestos-containing products used pursuant to those specifications would not injure those products' intended users. Pittsburgh-Corning therefore seeks indemnification from the United States for any breach of that warranty; plaintiff's recovery in this case would allegedly constitute such a breach. Like the third claim, this claim arises under contract law and this court allegedly has jurisdiction under 28 U.S.C. § 1346(a)(2), a section of the Tucker Act.

#### 5. *Negligence as a Controller of Work Site*

Pittsburgh-Corning's fifth claim seeks indemnity in tort based upon a range of alleged breaches of the United States' duty to exercise ordinary care in the management of asbestos-containing products at the Philadelphia Naval Shipyard. Pittsburgh-Corning alleges that the United States negligently specified the characteristics of the products which it ordered, that the United States negligently failed to warn its employees about those products' hazards, and that the United States negligently failed to supervise the use of those products at the shipyard. As this claim is based upon Pennsylvania tort law, Pittsburgh-Corning brings it under the Federal Tort Claims Act.

#### 6. *Negligence as Employer and Shipowner*

Pittsburgh-Corning's sixth claim for relief seeks to recover for the United States' negligence (1) as Mr. Colombo's employer, and (2) as the owner of vessels on which Mr. Colombo allegedly worked. The claim against the United States as an employer arises under Pennsylvania tort law and largely overlaps Pittsburgh-Corning's fifth claim for relief. The claim against the United States as vessel owner assertedly arises under federal maritime law, which imposes a duty of ordinary care upon vessels. Both, however, are asserted against the United States through the Federal Tort Claims Act.

#### 7. *Good Samaritan Doctrine*

Pittsburgh-Corning's seventh claim for relief seeks contribution under Pennsylvania tort law. Pittsburgh-Corning alleges that the United States engaged in a course of study and regulation of the use of asbestos. Pittsburgh-Corning contends that this course resulted in the assumption by the United States of a duty to exercise ordinary care in its regulation of asbestos products. Pittsburgh-Corning alleges that the United States breached that duty of ordinary care and therefore must contribute under the Federal Tort Claims Act to any recovery which plaintiff may receive from Pittsburgh-Corning.

#### 8. *Failure to Warn About Tobacco*

Pittsburgh-Corning's eighth claim is a subsidiary aspect of its seventh claim. Specifically, Pittsburgh-Corning alleges that the United States breached the ordinary duty of care which it had assumed to warn plaintiff about the synergistic effects of exposure to asbestos fibers and cigarette smoking.

#### C. *Claims Barred by the Pennsylvania Workmen's Compensation Act*

Pittsburgh-Corning's third-party complaint seeks recovery from plaintiff's employer, the United States. Section 303 of the Pennsylvania Workmen's Compensa-

tion Act ("PWCA"), Pa.Stat.Ann. tit. 77, § 481 (Purdon Supp.1983), provides generally that workers' compensation benefits are the exclusive remedy which injured employees may obtain from their employers for injuries suffered in the course of employment. The United States argues that this provision bars all claims against the United States which derive from Pennsylvania tort law. Specifically, the United States seeks to dismiss Pittsburgh-Corning's first, second, fifth, sixth, seventh, and eighth claims on this ground.

On its face, the PWCA does not apply to a federal employee's employment relationship. *See Baksalary v. Smith,* 579 F.Supp. 218, 222 (E.D.Pa.1984) (three-judge panel). The act applies only to "employees" who perform work under the control of an "employer." Pa.Stat.Ann. tit. 77, § 22 (Purdon Supp.1983). The federal government is not an "employer" under the Act. Pa.Stat. Ann. tit. 77, § 21 (Purdon Supp.1983). Instead, federal employees are covered by the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. §§ 8101–8193. Like most workers' compensation statutes, FECA includes an "exclusive liability" provision limiting the employer's—here, the United States'—liability for its employee's injury sustained in the course of the employee's employment. Section 8116(c) provides:

> The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute. However, this subsection does not apply to a master or a member of a crew of a vessel.

■ Section 8116(c) limits the liability of the United States to "any other person otherwise entitled to recover damages from the United States...." However, the Supreme Court has recently held that a third party who is sued by a federal employee may bring a third-party complaint against the United States, notwithstanding section 8116(c)'s limitation: "[s]ection 8116(c) was intended to govern only the rights of employees, their relatives, and people claiming through or on behalf of them." *Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 103 S.Ct. 1033, 1037, 74 L.Ed.2d 911 (1983). Therefore, FECA does not bar Pittsburgh-Corning's third-party complaint. *PNS II,* 589 F.Supp. at 1574; *Prather v. Upjohn Co.,* 585 F.Supp. 112, 113 (N.D.Fla. 1984).

In both *PNS II* and *Prather,* third-party plaintiffs contended that *Lockheed* created a third-party right of action for defendants asserting contribution or indemnity claims. Both Judge Gignoux in *PNS II* and Judge Vinson in *Prather* rejected this contention. "*Lockheed* does not automatically entitle [a defendant] to bring an indemnity or contribution action against the United States ... [I]t is necessary ... to look at the ... substantive law in each instance." *Prather,* 585 F.Supp. at 113; *accord PNS II,* 589 F.Supp. at 1574. In *Lockheed,* the Court assumed that Lockheed had a substantive third-party claim against the United States; the sole question was whether FECA barred that claim. *Lockheed,* 103 S.Ct. at 1037 n. 8.

■ The parties to this action therefore agree that I must refer to the substantive law applicable to each of Pittsburgh-Corning's claims to determine whether that claim is viable. For Pittsburgh-Corning's tort-based claims, I must begin with the Federal Tort Claims Act, the United States' waiver of sovereign immunity for tort claims. The FTCA provides, in pertinent part:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to

the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. § 2674. Therefore, the applicable substantive law, the FTCA, requires a further reference to the substantive law which would apply to "a private individual under like circumstances...."

A "private individual under like circumstances" to the United States in this case is a private shipyard employer in Pennsylvania. All private employers, with certain inapplicable exceptions, are subject to the PWCA. Pa.Stat.Ann. tit. 77, § 21 (Purdon Supp.1983). This coverage is mandatory. Pa.Stat.Ann. tit. 77, § 431 (Purdon Supp. 1983); *see also Baksalary*, 579 F.Supp. at 230–231 n. 19. Thus, a private shipyard employer in Pennsylvania would be subject to the provisions of PWCA. The parties nevertheless disagree as to whether for the purpose of testing the viability of Pittsburgh-Corning's third-party claims the United States is to be treated as if it were subject to PWCA.

The reason for this disagreement is that section 303 of PWCA would arguably bar Pittsburgh-Corning's claim if the United States is to be treated as an employer subject to PWCA. Section 303(b) provides, in pertinent part:

In the event injury or death to an employe is caused by a third-party, then such employe, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employes, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the

date of the occurrence which gave rise to the action.

Pa.Stat.Ann. tit. 77 § 481(b) (Purdon Supp. 1983).

The Pennsylvania Supreme Court has summarized the purpose and effect of this statute as follows:

Section 303(b) creates an exception to the general right to contribution from joint tortfeasors. Under that section, a third party whose negligence is responsible, in part, for an injury suffered by an employee protected by the Workmen's Compensation Act, may not, in the suit brought by the employee against him, join the employer as an additional defendant. Nor may the third party otherwise seek contribution or indemnity from the employer, even though the employer's own negligence may have been the primary cause of the injury.

*Tsarnas v. Jones & Laughlin Steel Corp.*, 488 Pa. 513, 412 A.2d 1094, 1096 (1980); *see also Heckendorn v. Consolidated Rail Corp.*, 502 Pa. 101, 465 A.2d 609, 611 (1983) (citing cases). Our Court of Appeals has stated that section 303(b)'s bar on joinder of employers as third-party defendants on barred claims applies not only in state court but also in federal court. *Erie Castings Co. v. Grinding Supply, Inc.*, 736 F.2d 99, 101 (3d Cir.1984). Thus, if Colombo's injury was employment-related and if the United States should be treated as Colombo's employer under the PWCA, section 303(b) would bar Pittsburgh-Corning's claims. *See Ryden v. Johns-Manville Products*, 518 F.Supp. 311 (W.D.Pa.1981).

Pittsburgh-Corning and Eagle-Picher argue that PWCA section 303(b) bars none of Pittsburgh-Corning's claims because section 303(b) cannot apply to the United States. These third-party plaintiffs suggest that a "private individual under like circumstances" to the United States for purposes of FTCA means a private employer covered by FECA and not by PWCA. Pittsburgh-Corning and Eagle-Picher correctly point out that PWCA excludes federal employment relationships from its scope and FECA expressly covers this employ-

ment relationship. From these facts, third-party plaintiffs conclude that FTCA does not incorporate PWCA's exclusivity provision.

I find this argument unpersuasive. A private shipyard employer in Pennsylvania would have to be covered by PWCA, and the FTCA defines the United States' liability as that of "a private individual under like circumstances." 28 U.S.C. § 2674. Therefore, unless the phrase "under like circumstances" is read to nullify the phrase "private individual" and not to modify it, PWCA must apply to Pittsburgh-Corning's claims. It is of course possible to argue that FECA is one of the "circumstances" which define the liability of the United States as shipyard employer; FECA does not, however, apply to a "private individual." Applying FECA would therefore be facially inconsistent with the language of the FTCA. In short, I can see no reason why the Pennsylvania substantive law governing a claim against the United States under FTCA should not include PWCA when *all* private individuals in Pennsylvania fall within its scope. Judge Gignoux reached the same conclusion with regard to the Maine Workers' Compensation Act in *PNS II:*

> The Court agrees with the United States that its status at PNS is analogous to that of a compensation-paying private shipyard employer in Maine. Such an employer would be covered by the Maine Workers' Compensation Act.... Section 4 of the Maine Act ..., as interpreted by the Maine Court, provides a covered employer with immunity from third-party claims for noncontractual contribution or indemnity arising from work-related injuries to its employees.... This Court has recently held that BIW, a compensation-paying private shipyard employer in Maine, is immunized by Section 4 from such third-party suits brought against it as an employer. *In re All Maine Asbestos Litigation (BIW Cases),* 589 F.Supp. 1563 (D.Me.July 5, 1984). Since the FTCA subjects the United States only to analogous private liability, the United States enjoys the immunity provided by

Section 4 of the Maine Act to a compensation-paying private shipyard employer from third-party suits for non-contractual contribution or indemnity brought against it in its capacity as an employer.

*PNS II, supra,* 589 F.Supp. at 1574–75 (citations omitted).

In this circuit, Judge Ziegler has applied the same reasoning. In *Giannuzzi v. Doninger Metal Products,* 585 F.Supp. 1306 (W.D.Pa.1984), plaintiff claimed that he was injured in the course of his employment for the Postal Service when a mail container fell on him. Plaintiff sued the container's manufacturer. The manufacturer sought to join the United States as a third-party defendant on the theory that the United States had negligently maintained the container. Judge Ziegler reasoned as follows:

> The federal government's liability shall be determined "in accordance with the law of the place where the (wrongful) act or omission occurred." 28 U.S.C. § 1346(b). We will therefore consult Pennsylvania law because the injury and the alleged breach of the duty to exercise reasonable care occurred in Pennsylvania.
>
> The law to be applied is the Pennsylvania Workmen's Compensation Act. 77 P.S. § 1 *et seq.* ...
>
> As interpreted by the Pennsylvania courts, the Workmen's Compensation Act has "obliterated" the common law cause of action against an employer and foreclosed the adjudication of liability on the part of the employer, whether as the initial defendant or as a third-party defendant.

*Giannuzzi,* 585 F.Supp. at 1308. Judge Ziegler therefore granted the United States' motion to dismiss.

For these reasons, to the extent that section 303(b) of PWCA would bar Pittsburgh-Corning from initiating a third-party proceeding against a private shipyard employer if Pittsburgh-Corning were being sued by a worker employed by the private shipyard, the United States' motion to dis-

miss or for summary judgment must be granted. Unless Pittsburgh-Corning can avoid the operation of section 303(b) as a bar to its first, second, fifth, sixth, seventh, and eighth claims for relief, those claims are barred.

Having decided that PWCA's exclusion *can* apply to the United States, I must decide whether it *does* apply under the circumstances of this case. This requires consideration of two theories which might be raised in order to avoid section 303(b)'s prohibition of actions against an employer. I now turn to these two theories.

### 1. *Injury not in the course of employment*

■ Section 303(b) only bars suits against employers based upon "injury or death to an employe...." Pa.Stat.Ann. tit. 77, § 481(b). (Purdon Supp.1983). Section 303(a) defines "injury or death to an employe" by reference to section 301(c), Pa. Stat.Ann. tit. 77, § 411 (Purdon Supp.1983). Section 301(c)(1) defines "injury" "to mean an injury to an employe ... arising in the course of his employment and related thereto...." *Id.*, § 411(1). Section 301(c)(2) provides in part that "[t]he terms 'injury,' 'personal injury,' and 'injury arising in the course of his employment,' used in this act, shall include, unless the context clearly requires otherwise, occupational disease as defined in section 108 of this act...." *Id.*, § 411(2).

Plaintiff alleges that he was exposed to asbestos fibers manufactured or distributed by defendants in the course of his employment at the Philadelphia Naval Shipyard from August 11, 1958, until the present. Complaint ¶ 7. As a result of this exposure, Mr. Colombo alleges that he has contracted or may contract asbestosis, lung cancer, mesothelioma, and other unspecified injuries. "Asbestosis and cancer resulting from direct contact with, handling of, or exposure to the dust of asbestos in any occupation involving such contact, handling or exposure" constitute occupational disease within the meaning of section 108 of PWCA. Pa.Stat.Ann. tit. 77, § 27.1(*l*)

(Purdon Supp.1983). Accordingly, Mr. Colombo has alleged an injury in the course of his employment for purposes of section 303(b). Presumably for this reason, neither Pittsburgh-Corning nor Eagle-Picher has suggested that their claims do not fall within section 303(b) because Mr. Colombo's injury was not in the course of his employment.

### 2. *Dual Capacity*

Under the "dual capacity" doctrine, an employer "may become liable to an employee for actions undertaken in an additional and separate capacity from that of an employer." *Weldon v. Celotex Corp.*, 695 F.2d 67, 71 (3d Cir.1982); *see also* 2A Larson, *Workmen's Compensation Law* § 72.-80 (1983); Annot., 23 A.L.R. 4th 1151 (1983). In *Tatrai v. Presbyterian University Hospital*, 497 Pa. 247, 439 A.2d 1162 (1982), the Pennsylvania Supreme Court appears to have accepted the view that PWCA's exclusivity provision might not bar some suits by an employee against his employer because the latter acted in a non-employer capacity when it caused the employee's injury. The question presented here is whether, in a hypothetical law suit identical in all respects with the one at bar except that plaintiff's employer is a *private* shipyard, a Pennsylvania court would read *Tatrai* as permitting Pittsburgh-Corning to pursue a third-party claim against the shipyard.

*Tatrai* involved a suit by a hospital employee against the hospital. Ms. Tatrai became ill while at work. No doctor was available at the Employee Health service, so Ms. Tatrai was instructed to go to the hospital's emergency room. She received treatment there for which the hospital billed Blue Cross; the hospital thus followed the procedure it customarily pursued with respect to paying patients. While in the emergency room, Mr. Tatrai was injured when a table collapsed. She brought an action against the hospital for damages for the resulting injuries. The Pennsylva-

nia Supreme Court held [3] that Ms. Tatrai could proceed with her claim against her employer because "[t]here is no basis for distinguishing appellant, a paying customer, from any other member of the public injured during the course of treatment." 439 A.2d at 1166.

In *Budzichowski v. Bell Telephone Co. of Pa.*, 503 Pa. 160, 469 A.2d 111 (1983), the Pennsylvania Supreme Court rejected an employee's claim that the telephone company acted in a "dual capacity" when it provided medical care for him at the company's dispensary. "The treatment received by appellant at the Bell dispensary was not available to the general public and would not have been available to appellant but for his employment relationship with Bell.... Bell was not operating in a 'dual capacity,' but rather only in its capacity as employer of appellant." 469 A.2d at 115.

The United States takes the position that these decisions of the Pennsylvania Supreme Court, and subsequent decisions of other courts applying them, have no relevance for its motion to dismiss. The United States takes the position that because the United States Supreme Court has rejected the dual capacity doctrine in certain employee suits against the United States under FECA or LHWCA, that doctrine cannot apply here. This position misconceives the inquiry. Mr. Colombo has not sued the United States, his former employer. In a suit by Mr. Colombo, FECA's exclusivity provision would apply and federal law would determine whether FECA permits

suits against the United States under the dual capacity theory. In this case, however, FECA's exclusivity provision does not apply, as the Supreme Court held in *Lockheed*. The governing law is the Pennsylvania law of dual capacity, made applicable by the FTCA to the United States.

Pittsburgh-Corning's first and second claims for relief attempt to impose liability upon the United States in its capacity as a seller of raw asbestos. Judge Takiff has rejected the argument that an employee of an asbestos producer could sue his employer in his capacity as the manufacturer of the asbestos products to which the employee was exposed. Judge Takiff reasoned:

> Product malfunction or defect causing employee injury while engaged in the course of the employer's business may well be a breach of the employer's duty to provide a safe working environment. Consequently, that an employer happens to be the manufacturer of an allegedly defective product used by the employee in the workplace in the very performance of the work for which he was engaged should not take the employer outside the compensation mechanism; it is a coincidence which does not disturb the fundamental obligations and expectations arising between employer and employee.

*Anastasi v. Pacor, Inc.*, 7 Phila. 488, 516 (1982), *appeal pending*, No. 910 Phila. 1983 (Pa.Super.Ct. filed April 7, 1983).[4] Judge Troutman has reached the same result, relying in part on Judge Takiff's *Anastasi* opinion. *Oyster v. Johns-Manville Corp.,*

---

**3.** Justice (now Chief Justice) Nix wrote the court's opinion in *Tatrai*. However, no other justice joined that opinion. Justice Roberts filed a concurring opinion in which Chief Justice O'Brien, Justice Larsen and Justice Flaherty joined. Justices Kauffman and Wilkinson did not participate in the decision of the case. Therefore Justice Roberts' opinion is the decision which binds a federal court interpreting Pennsylvania law. *See Weldon v. Celotex Corp.*, 695 F.2d 67, 71 (3d Cir.1982) (expressly rejecting Justice Nix's position as not representing the *Tatrai* majority).

**4.** Judge Takiff coordinates the asbestos cases for the Pennsylvania Court of Common Pleas for Philadelphia County. Judge Takiff's conclusion

is in accord with two decisions of courts in other states considering the applicability of the dual capacity doctrine to an asbestos manufacturer sued by his employee or by another manufacturer for contribution. *See Farrall v. Armstrong Cork Co.*, 457 A.2d 763, 768–770 (Del.Super.Ct.1983); *Quinn v. National Gypsum Co.*, 124 N.H. 418, 469 A.2d 1368 (1983). A federal court in Illinois has reached Judge Takiff's result under the Illinois workers' compensation statute. *In re Johns-Manville/Asbestosis Cases*, 511 F.Supp. 1229, 1232 (N.D.Ill.1981). Judge Takiff has collected non-asbestos cases which reach a similar conclusion. *Anastasi*, 7 Phila. at 507–514, as has an annotation, Annot., 23 A.L. R.4th 1151, 1177–1185 (1983).

568 F.Supp. 83 (E.D.Pa.1983). *Oyster* left intact a decision by a four-judge panel of this court, issued before *Tatrai,* which held employers immune from suit by employees alleging injury from exposure to asbestos products manufactured by their employers. *Kohr v. Raybestos-Manhattan, Inc.,* 522 F.Supp. 1070 (E.D.Pa.1981) (four-judge panel); *see also Tysenn v. Johns-Manville Corp.,* 517 F.Supp. 1290, 1293 (E.D.Pa. 1981) (adverting to *Kohr* ).

■ These cases lead me to conclude that if Mr. Colombo had been employed by a private purveyor of asbestos products, Mr. Colombo would have been barred by PWCA from suing his employer for exposure to those products in the course of his employment; the dual capacity doctrine would not enable Mr. Colombo to avoid that bar. This conclusion, in turn, mandates the conclusion that Pittsburgh-Corning could not join a private employer as a third-party defendant here. *See Heckendorn v. Consolidated Rail Corp.,* 502 Pa. 101, 465 A.2d 609 (1983). Section 303(b)'s bar applies when injury occurs to someone employed by a possible defendant or third-party defendant. *Id.* The dual capacity theory, as applied to such a third-party suit, still concerns itself with the employment relationship of the injured individual and the third-party defendant. Therefore, because Mr. Colombo would be barred from suing a private employer/manufacturer for exposure to a negligently manufactured or defective asbestos product, Pittsburgh-Corning would be barred from joining that employer/manufacturer in an action for tort-based contribution or indemnity. Under FTCA, then, Pittsburgh-Corning is barred from bringing its first two claims for relief against the United States.

Insofar as Pittsburgh-Corning's fifth and sixth claims for relief seek recovery based upon the United States' role as landbased shipyard employer, the foregoing analysis precludes the application of the dual capacity doctrine to permit Pittsburgh-Corning's suit. The obligation of the United States to provide a safe workplace and to warn employees about the hazards of certain materials arises solely out of the employment relationship. There is, in effect, no alternative capacity in which to sue an employer on these theories. Thus, Pittsburgh-Corning's fifth and sixth claims must be dismissed insofar as they invoke nonmaritime law.

Pittsburgh-Corning's seventh and eighth claims for relief seek to imply an obligation of the United States to give appropriate warnings of the dangers of asbestos products from the United States' regulation of asbestos production. Obviously, no case can exist in which a private employer regulated the production and manufacture of a product. Therefore, no court can have decided whether the Pennsylvania dual capacity doctrine would permit suit against such an employer by an employee or by a third-party for contribution.

Our Court of Appeals, however, has decided a case in which a private employer engaged in activity analogous to regulation. In *Weldon v. Celotex Corp.,* 695 F.2d 67 (3d Cir.1982), plaintiffs alleged that defendant, a private asbestos miner and manufacturer, had studied the effects of exposure to asbestos and had discovered that asbestos exposure could cause disease. Plaintiffs sought to recover from defendant on the theory that after the end of the employment relationship, defendant had a continuing duty to warn plaintiff of later-discovered dangers. The Court of Appeals held that the dual capacity doctrine announced in *Tatrai* did not permit plaintiff to bring such a claim against his former employer.[5]

*Weldon,* in my view, suggests that the Third Circuit would not predict that a Pennsylvania court would view the capacity of regulator as a "dual capacity." I therefore

5. The Third Circuit has recently considered a similar problem under the doctrine of *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and has concluded that the United States may not be sued for failure to warn a former civilian employee of the United States Navy of radiation dangers discovered after the employee has left government employ. *Heilman v. United States,* 731 F.2d 1104 (3d Cir.1984).

conclude that Pittsburgh-Corning's seventh and eighth claims for relief must be dismissed.

Pittsburgh-Corning's sixth claim for relief presents a different and more complex problem, involving both the dual capacity doctrine and an argument that the Longshoremen and Harbor Workers' Compensation Act ("LHWCA"), by authorizing negligence actions against vessel owners, preempts the PWCA's exclusivity provision. Because those questions are related, I take them up together in the following section.

### D. *Negligence of United States as Vessel Owner*

In its sixth claim for relief, Pittsburgh-Corning claims that the United States as vessel owner owed Mr. Colombo a duty, defined by federal law, to exercise care to maintain a safe environment for him and to warn him of the dangers of exposure to asbestos while on the United States' vessels. Like the other tort claims in the

third-party complaint, this claim is brought under the Federal Tort Claims Act.[6]

The FTCA does not, of course, establish standards of care to which the United States must adhere; rather, it requires that for some purposes the United States will be treated as would a "private individual under like circumstances." 28 U.S.C. § 2674. Liability is thus defined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). This law is often defined as that which a state court would apply to the particular claim involved. "Thus, if the state would look to a state or federal statute in determining the liability of a private person for the tort in question, the same statute will be applied in measuring the conduct of the government." *Lambertson v. United States,* 528 F.2d 441, 444 (2d Cir.), cert. denied, 426 U.S. 921, 96 S.Ct. 2627, 49 L.Ed.2d 374 (1976). *See Richards v. United States,* 369 U.S. 1, 11–13, 82 S.Ct. 585, 591–593, 7 L.Ed.2d 492 (1962); *Hess v. United States,* 361 U.S. 314, 318 n. 7, 80 S.Ct. 341, 345 n. 7, 4 L.Ed.2d 305 (1960).

**6.** Both the third-party plaintiffs and the United States have assumed that the FTCA provides the jurisdictional basis for this count of the third-party complaint. This opinion accordingly takes the FTCA as the starting point for analyzing this count for purposes of the United States' motion to dismiss or for summary judgment. I note this explicitly because in my judgment, the source (although not the existence) of jurisdiction is a matter of some doubt. The claim in this count is against the United States as vessel owner, and Pittsburgh-Corning repeatedly characterizes the applicable substantive law as federal maritime law. One might logically infer that this claim arises under federal admiralty jurisdiction. If that is the case, the FTCA by its own terms cannot apply. 28 U.S.C. § 2680(d); *see also* Suits in Admiralty Act, 46 U.S.C. § 741 *et seq.; United States v. United Continental Tuna Corp.,* 425 F.2d 164, 176 n. 14, 96 S.Ct. 1319, 1326 n. 14, 47 L.Ed.2d 653 (1976) (1960 amendments to Suits in Admiralty Act have "generally been held to require that those maritime tort claims that were previously cognizable only ... under the Federal Tort Claims Act now be brought ... under the Suits in Admiralty Act"). Thus, admiralty jurisdiction and the FTCA are mutually exclusive as potential bases for Pittsburgh-Corning's claim.

A number of courts have faced the question whether asbestos-related claims of shipyard

workers fall within the federal courts' admiralty jurisdiction. Most of these have not found admiralty jurisdiction, due to the absence of the maritime connection mandated by *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). See, e.g., *Harville v. Johns-Manville Products Corp.,* 731 F.2d 775 (11th Cir.1984); *Austin v. Unarco Industries, Inc.,* 705 F.2d 1 (1st Cir.), cert. dismissed, — U.S. —, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983); *Keene Corp. v. United States,* 700 F.2d 836 (2d Cir.), cert. denied, — U.S. —, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *Owens-Illinois v. United States District Court,* 698 F.2d 967 (9th Cir.1983); *Maine I, supra,* 581 F.Supp. at 974–75. But see *White v. Johns-Manville Corp.,* 662 F.2d 234 (4th Cir.1981), cert. denied, 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982).

It is clear that this court has subject-matter jurisdiction over Pittsburgh-Corning's sixth claim under one of these two jurisdictional sources. *See Maine I, supra,* 581 F.Supp. at 974–75. Because the issue has not been briefed or argued, and because my resolution of the United States' motion as to Pittsburgh-Corning's sixth claim does not require a resolution of this jurisdictional issue at this time, I do not now decide from which source the court derives its power to hear that claim.

As previously observed, for the purposes of this case a "private individual under like circumstances" is a private shipyard employer in Pennsylvania. The law which Pittsburgh-Corning seeks to apply is section 5(b) of the LHWCA. *See* 33 U.S.C. § 905(b).[7] That section makes vessel owners liable for negligence to those who qualify under the Act's definition of "employee." *Id.; see Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). The liability defined in section 5(b) applies in actions by the vessel owner's employees. *Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 103 S.Ct. 2541, 2547–48, 76 L.Ed.2d 768 (1983). Thus, an employee of a private shipyard would be able, under the LHWCA, to maintain an action for negligence against the shipyard in its capacity as vessel owner. *Maine I, supra,* 581 F.Supp. at 975. It follows that a third-party action for indemnity or contribution on the same facts would also be permissible, unless the LHWCA itself bars such third-party actions. *Id. See Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 103 S.Ct. 1033, 1036, 74 L.Ed.2d 911 (1983).

The United States argues that the negligence action authorized by section 5(b) has no application here, because (1) Pennsylvania law prohibits such actions, whether direct or indirect, against covered employers; (2) section 5(a) of the LHWCA bars third-party actions brought under section 5(b) of the same Act; and (3) the substantive law of contribution does not permit this third-party claim. I will address each of these arguments in turn.

#### 1. *Application of the Pennsylvania Workmen's Compensation Act*

I have already held that a private shipyard employer in Pennsylvania would be covered by the Pennsylvania Workmen's Compensation Act. Therefore, that Act, including the exclusivity provision of section 303(b), applies to this third-party FTCA action against the United States. In addition, I have held that section 303(b) requires that the other tort counts in Pittsburgh-Corning's third-party complaint be dismissed, unless either the dual capacity doctrine or some supervening law acts to remove the United States from the protective umbrella section 303(b) creates for Pennsylvania employers. There is no arguable conflict between federal and state law which might preclude application of section 303(b) to the other tort counts. But Pittsburgh-Corning argues that the LHWCA precludes application of section 303(b) to bar to its claim against the United States as vessel owner.

The state and federal statutes conflict only if the former bars a third-party action against a shipyard employer *qua* vessel owner for damages to an employee. There

7. Section 5(b) of the Act provides as follows:
In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.
33 U.S.C. § 905(b). This section has recently been substantially amended. *See* Longshore and Harbor Workers' Compensation Act Amendments of 1984, Pub.L. No. 98–426, § 5(a)(1) (Sept. 28, 1984). The amendments do not, however, apply to injuries suffered before the date of enactment. *Id.* § 28(c). Therefore, the amended version of section 5(b) does not apply to this case.
Unless otherwise specified, I shall refer in this opinion to the former section 5 of the LHWCA as if it were current. I adopt this convention for the sake of convenience.

is no conflict if the dual capacity doctrine as defined in Pennsylvania applies to exempt this action from section 303(b). Pittsburgh-Corning argues that the dual capacity doctrine does apply here, because the United States' duty as vessel owner is separate and distinct from its duty as employer.

It is true that, under the LHWCA, a shipyard employer has a duty to harbor workers working on vessels it owns, whether or not those workers are its employees. 33 U.S.C. § 905(b); *see Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 103 S.Ct. 2541, 2547–48, 76 L.Ed.2d 768 (1983); *In re All Asbestos Cases,* slip op. at 5–6, 603 F.Supp. 599, 605–06 (D.Hawaii 1984). Thus, the employer/vessel owner's two hats give rise to two sets of duties under the LHWCA: as an employer, the shipyard must pay compensation regardless of fault for its employees' work-related injuries, 33 U.S.C. § 904; as a vessel owner, it must exercise due care to keep its vessels safe for those who work on them. *Id.* at § 905(b). The shipyard may owe both these duties to the same individual, so that differing legal "capacities" result in different liabilities to employees. *Pfeifer, supra,* 103 S.Ct. at 2548.

These different legal liabilities do not, however, require the conclusion that the dual capacity doctrine applies here. An employer who manufactures a product which causes its employee's work-related injury has different legal duties stemming from its separate roles as manufacturer and employer. Nevertheless, as I discussed earlier, courts have not applied Pennsylvania's dual capacity doctrine to suits against the employer-as-product-man-

ufacturer, at least where the employee's injury was suffered incident to his work. *Oyster v. Johns-Manville Corp.,* 568 F.Supp. 83, 87–88 (E.D.Pa.1983); *Silvestri v. Strescon Industries,* 312 Pa.Super. 82, 458 A.2d 246, 247 (1983); *Anastasi v. Pacor, Inc.,* 7 Phila. 488, 516 (Ct.Common Pleas 1982), *appeal pending* No. 910 Phila. 1983 (Pa.Super.Ct. filed April 7, 1983). In such cases, the products liability claim is essentially a claim that the workplace is unsafe. The fact that the dangerousness of the workplace stems from the use of a dangerous or defective product which the employer has manufactured does not change that characterization.

I find no basis for distinguishing such cases from the case of the employer as vessel owner. Pittsburgh-Corning's sixth claim in essence seeks to hold the United States liable for negligently failing to maintain the safety of part of its workplace.[8] That failure allegedly caused injury to a United States employee whose injury was connected with his job and was suffered on the job site. *Cf. Tatrai, supra.* Such an injury "should not take the employer outside the compensation mechanism...." *Anastasi, supra,* 7 Phila. at 516. Moreover, there is no connection between Mr. Colombo's exposure to asbestos particles while working aboard United States vessels and any asbestos-related risks posed by those vessels to the general public. Absent such a connection, Pennsylvania's dual capacity doctrine does not apply, because the employee's injury does not result from a risk which the employee shared with the general public. *Silvestri v. Strescon Industries,* 312 Pa.Super. 82, 458 A.2d 246, 247 (1983).[9]

---

**8.** This is equally true of the failure-to-warn claim, which alleges that the absence of adequate warnings rendered the United States' vessels unsafe for those working on them. *See* Third-Party Complaint of Pittsburgh Corning ¶¶ 39–42.

**9.** I am aware that, in Justice Roberts' *Tatrai* opinion, the Pennsylvania Supreme Court used the LHWCA as an example of "the independent force of a duty owed to the general public." 429 A.2d at 1167. In this context, the court quoted the following passage from *Reed v. The Yaka,*

373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963):

Only blind adherence to the superficial meaning of a statute could prompt us to ignore the fact that Pan Atlantic was not only an employer of longshoremen but was also a bareboat charterer and operator of a ship and, as such, was charged with the traditional, absolute, and nondelegable obligation of seaworthiness which it could not be permitted to avoid. *Id.* at 415, 83 S.Ct. at 1353 (quoted in *Tatrai, supra,* 439 A.2d at 1167). Pittsburgh-Corning

This conclusion squarely raises the federal preemption issue: I have now held that section 303(b) of the PWCA would bar Pittsburgh-Corning's sixth claim, and section 5(b) of the LHWCA (as interpreted by the Supreme Court in *Jones & Laughlin Steel Corp. v. Pfeifer, supra*) apparently grants the right to bring such a claim.

In *Sun Ship v. Pennsylvania*, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980), the Supreme Court faced the question whether the LHWCA's compensation scheme preempts state workers' compensation laws with regard to land-based harbor workers within LHWCA's coverage. The Court concluded that no such preemptive effect was intended by Congress when in 1972 it extended the LHWCA to include many land-based workers. *Id.* at 720–23,

100 S.Ct. at 2436–38. Instead, the Court decided, Congress meant for the federal compensation scheme to supplement the state statutes and not to replace them. *Id.* Accordingly, the coexistence of state and federal laws with different benefit schedules did not present any conflict.

In a footnote to its preemption discussion, the Court in *Sun Ship* noted that federal and state claims might conflict if the state law expressly made compensatory awards thereunder final. *Id.* at 724 n. 6, 100 S.Ct. at 2438 n. 6. In that event, an injured harbor worker who, having already received benefits under the state law, sought benefits under the LHWCA, would be denied the right to the federal statute's benefits. The court suggested that such a

---

contends that this discussion indicates that the Pennsylvania Supreme Court would apply the dual capacity doctrine to exempt a claim against a shipyard employer *qua* vessel owner from section 303(b) of the PWCA.

In *Reed v. The Yaka*, the Supreme Court found that the exclusive liability provision of the LHWCA did not bar a longshoreman's action against his employer in its capacity as charterer of the vessel. The Court emphasized the unfairness of precluding the longshoreman from maintaining such an action when other workers, who draw their pay from the independent stevedore but do the same job as the charterer's own employees, could sue the charterer. 373 U.S. at 415, 83 S.Ct. at 1353. The unfairness was especially acute because most workers in the injured party's position were employed by stevedoring companies. Gilmore & Black, the Law of Admiralty 445 (2d ed. 1975) (discussing *Reed*). Hence the bareboat charterer was in the position of guaranteeing the ship's seaworthiness to longshoremen generally, while avoiding any obligation to its own employees, where both sets of harbor workers bore the same risk of harm due to the vessel's unseaworthiness. *Id.*

The aspect of *Reed* on which Justice Roberts focused in *Tatrai* was the existence of a duty to the general public, which was exposed to the same risk as the plaintiff-employee. Justice Roberts emphasized that members of the general public used the hospital emergency room in which Ms. Tatrai, a hospital employee, was injured. 439 A.2d at 1166, 1167. Thus, when Ms. Tatrai used the emergency room, she bore the same risk as all the members of the general public to whom the hospital already owed a duty of care. It was pure fortuity that the injury she suffered occurred to her and not to a non-employee patient.

Mr. Colombo, as a United States employee working aboard United States vessels, was in a quite different position. There is no evidence before me that suggests that members of the general public were exposed to asbestos on board United States vessels to the same degree as Mr. Colombo. This case therefore resembles not *Tatrai*, but *Silvestri v. Strescon Industries*, 312 Pa.Super. 82, 458 A.2d 246 (1983), in which the dual capacity doctrine was held not to apply to a construction worker injured by defective concrete flooring which his employer manufactured. The Pennsylvania Superior Court explained its decision as follows:

In the instant case, Appellant was injured while working with Strescon's "product," the concrete floor. The "dual capacity" alleged by Appellants would be Strescon's status as producer and vendor of a consumer product, namely structural concrete products, such as the concrete floor.

However, Appellant Felice Silvestri was not involved in an activity related to Strescon's "dual capacity" in the instant case. The concrete floor had been manufactured by Strescon to be installed by Strescon directly and not to be sold to the general public. There is no relationship, on the instant facts, between Strescon's activities in the manufacture and sale of its goods to the general public and Appellant's injuries received while installing Strescon's product directly, as an employee of Strescon. Therefore, the exclusivity provisions of the Act apply to the instant case.

*Id.*, 458 A.2d at 247. This reasoning compels a finding that the United States was not acting in a "dual capacity" in connection with Mr. Colombo's injury for purposes of section 303(b) of the PWCA.

conflict might justify preemption of the state law's exclusivity provision. *Id.* In *BIW III,* Judge Gignoux applied *Sun Ship* to a third-party claim not involving a vessel owner, and therefore not involving section 5(b) of the LHWCA. The only possible conflict in that case was between the state law bar against third-party actions and the federal law permission of such actions under *Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983). *See BIW II, supra,* 589 F.Supp. at 1571 (holding that *Lockheed* reasoning applies to permit third-party actions under the LHWCA). The underlying claims did not derive from the LHWCA. Judge Gignoux held that under those circumstances there was no actual conflict between the LHWCA and the Maine statute. *BIW III, supra,* 589 F.Supp. at 1568–69. At the same time, he noted that such a conflict might exist in a case brought under section 5(b) of the LHWCA against a vessel owner/employer. *Id.* at 1569 n. 6.

That conflict is present here. *Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983), squarely holds that section 5(b) gives a harbor worker the right to bring a negligence action against his shipyard employer in its capacity as vessel owner. *Id.,* 103 S.Ct. at 2547–48; *accord Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 264–65, 99 S.Ct. 2753, 2758, 61 L.Ed.2d 521 (1979). *See also Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31, 41–44 (3d Cir.1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976). And *Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), teaches that the nature and scope of the 5(b) action is to be governed by federal law. *Id.* at 165–66 & n. 13, 101 S.Ct. at 1621 & n. 13. *See Maine I, supra,* 581 F.Supp. at 975–76. Moreover, the Court in *Scindia* noted that the legislative history of section 5(b) "states that land-based principles of assumption of risk and contributory negligence are not to be applied in [5(b)] cases." 451 U.S. at 168 n. 14, 101 S.Ct. at 1622 n. 14. There is thus some indication that

ordinary state tort law defenses might "knock out of kilter [the] delicate balance" created by the LHWCA. *See Edmonds v. Compagnie Generale Transatlantique, supra,* 443 U.S. at 273, 99 S.Ct. at 2763. Applying § 303(b) of PWCA to cut off this LHWCA § 5(b) action would of course have a much more drastic effect than would application of state-law rules regarding contributory negligence or assumption of risk.

■ The parties have not produced any evidence that Congress intended to allow state compensation statutes to, in effect, supersede section 5(b) in cases such as this. Nor has the court found any such evidence on its own. I am not faced with a situation where the state statute serves to reinforce or supplement a federally created remedy. *Cf. Sun Ship, supra,* 447 U.S. at 723–25, 100 S.Ct. at 2438–39. Instead, the PWCA, if applied, would annul the remedy offered by section 5(b). Lacking convincing evidence to the contrary, I conclude that Congress did not intend such a result. The PWCA's exclusivity provision does not apply to Pittsburgh-Corning's sixth claim.

### 2. *Permissibility of Third-Party Actions under the LHWCA*

The United States argues that section 5(a) of LHWCA, 33 U.S.C. § 905(a), bars third-party actions for contribution or indemnity against private shipyard employers. That provision reads:

The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter, or to maintain an

action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee.

33 U.S.C. § 905(a).

This language "is in all respects identical to the language of the exclusive liability provision of the FECA...." *BIW II*, 589 F.Supp. at 1571. *See* 5 U.S.C. § 8116(c). In *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983), the Supreme Court held that 5 U.S.C. § 8116(c)—the exclusive liability provision of FECA—does not bar a third-party action against the United States, even though the plaintiff could not have sued the United States directly. *Id.*, 103 S.Ct. at 1036–38. The Court stated that there was no indication from the legislative history that Congress was concerned with the rights of unrelated third parties. *Id.* at 1037. Therefore, the Court reasoned, the preclusive language of section 8116(c) applied only to direct actions by employees or those claiming on their behalf. *Id.* at 1038. Judge Gignoux, applying this analysis to a third-party claim against a private shipyard employer, reached the same conclusion as to 33 U.S.C. § 905(a)—Section 5(a) of LHWCA—as *Lockheed* reached regarding FECA:

> Applying the Supreme Court's analysis in *Lockheed* to § 905(a) of the LHWCA, the language of § 905(a) is in all material respects identical to the language of § 8116(c), and the Supreme Court's construction of that language in FECA would appear to be equally applicable to the corresponding LHWCA language. Moreover, a review of the legislative history of the LHWCA, including the 1972 amendments, persuades this Court that it

is equally unpersuasive to establish that Congress was concerned with the rights of non-vessel owner third parties. Insofar as unrelated non-vessel owner third parties are concerned, the 1972 amendments involved no "quid pro quo" compromise similar to that which benefited vessel owners. In short, there is no evidence either in the language of the statute or in the congressional history that Congress in any way addressed itself to, or was in any way concerned with, the rights of non-vessel owner third parties.

*BIW II, supra,* 589 F.Supp. at 1571.

I agree with Judge Gignoux's assessment. Nevertheless, *Lockheed* is not the sole basis for finding that section 5(a) of LHWCA allows third-party actions against an employer *qua* vessel owner. Indeed, *Lockheed* presented a situation in which the employer was insulated from any direct action against it by or on behalf of its employee. 5 U.S.C. § 8116(c). The issue was whether that prohibition extended to a third-party action against the employer for damages to be paid over to the employee. Pittsburgh-Corning's sixth claim raises an easier question. Section 5(b) of LHWCA permits *direct* actions against an employer *qua* vessel owner. *Pfeifer, supra,* 103 S.Ct. at 2548.[10] The question here, therefore, is whether section 5(a) precludes third-party actions against an employer who could be sued directly under section 5(b). The Court of Appeals for the Third Circuit has held that such third-party actions are permitted. *Griffith v. Wheeling Pittsburgh Steel Corp.*, 521 F.2d 31, 44 (3d Cir.1975) *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976).

The cases on which the United States relies are not persuasive. The United States cites cases regarding the liability to third parties of employers who could not be sued directly under section 5. *See, e.g., Passman v. Companhia de Navegacao*

---

**10.** It makes no difference that FECA would preclude Mr. Colombo from suing the United States directly. Pittsburgh-Corning's sixth claim is brought under FTCA, so that the liability of the United States is the same as that of a private shipyard employer. Such an entity would be subject to direct suit by its employee under section 5(b) as interpreted by the Supreme Court in *Pfeifer*.

*Maritima Netumar,* 544 F.Supp. 451 (E.D. Pa.1982) *aff'd,* 725 F.2d 669 (3d Cir.1983); *Lucas v. "Brinknes" Schiffahrts Ges.,* 379 F.Supp. 759 (E.D.Pa.1974) (three-judge panel),· *cert. denied,* 423 U.S. 866, 96 S.Ct. 127, 46 L.Ed.2d 95 (1975). These authorities do not purport to decide the question the Third Circuit decided in *Griffith:* whether a third-party action might be maintained against an employer *qua* vessel owner. Moreover, to the extent that they hold that third-party suits against non-vessel owner employers· are barred by section 5(a), they may be subject to some question in light of *Lockheed'*s interpretation of language almost identical to section 5(a).

The United States also points to the recently enacted amendments to the LHWCA as evidence of Congress' intent to prohibit third-party actions against shipyard employers in their vessel owning capacity. These amendments, signed into law September 28, 1984, appear to prohibit the bringing of suits by employees against their employers as vessel owners, whether such suit is brought "directly or indirectly." Longshore and Harbor Workers' Compensation Act Amendments of 1984, Pub.L. No. 98–426, § 5(a)(1) (Sept. 28, 1984) (amending section 5(b) of the LHWCA). The 1984 amendments might therefore bar Pittsburgh-Corning's sixth claim, if they applied in this case. But the amendments do not apply in this case. Section 28(c) of the Amendments expressly states that the amendments to section 5 of LHWCA "shall apply with respect to any injury after the date of enactment of this Act."

In a letter to the court written shortly after the 1984 amendments were enacted, the United States appeared to argue that those amendments reflect Congress' intent to preclude third-party actions such as this one, even where the amendments by their own terms do not apply. This argument both violates the most basic canons of statutory construction and contradicts the clear

import of the 1984 amendments. The character of the changes made in 1984 are poor evidence of the intent of Congress when the 1972 amendments were enacted. And to the extent the 1984 amendments have any effect at all on the reading of former section 5, that effect is quite the opposite of the one urged by the Government. The 1984 amendments represent a Congressional judgment that the 1972 amendments, as construed by the courts over the last twelve years, should continue to apply in pending cases. If anything, then, the judicial gloss placed on section 5 by *Pfiefer* has, for our purposes, been ratified by Congress.

For the foregoing reasons, I hold that nothing in section 5(a) of LHWCA bars Pittsburgh-Corning's sixth claim.

### 3. *Permissibility of Third-Party Actions under the Substantive Law of Indemnity and Contribution*

■ Because of its argument that both PWCA and LHWCA barred Pittsburgh-Corning's sixth claim—an argument I have now rejected—the United States did not focus in its briefs on the effect of the substantive law of indemnity or contribution. Recently, however, the United States has brought to my attention [11] Judge Blumenfeld's decision in *In re General Dynamics Asbestos Cases,* 602 F.Supp. 497 (D.Conn. 1984), in which a third-party claim identical to the one before me was dismissed on the ground that Connecticut law would not permit contribution among joint tortfeasors where both tortfeasors' negligence was "active." *Id.* at 500–01.

Judge Blumenfeld held, as I have in this opinion, that LHWCA defined the United States' duty as vessel owner toward those who worked on its vessels. *Id.* at 500. He went on to hold that the claim before him did not fall within the court's admiralty

---

**11.** The United States has apparently filed motions to dismiss third-party complaints against it in a number of asbestos cases in port cities around the country. As rulings on these motions have trickled out, the parties have so informed the court, sending copies of slip opinions and occasionally commenting on the reasoning in those opinions. These efforts have greatly assisted me in ruling on the United States' motion in this case.

jurisdiction, and that therefore the federal maritime law of contribution would not apply. *Id.* at 500. Looking to Connecticut law to supply the rule governing contribution in tort cases, Judge Blumenfeld found that contribution would not be permitted under that law. *Id.* at 501.

I need not address here the difficult question whether Pittsburgh-Corning's claim against the United States as vessel owner is within the court's admiralty jurisdiction. *See* cases cited note 6 *supra.* Nor do I decide whether federal maritime law governs the scope of indemnity or contribution available in this case. *See Harville v. Johns-Manville Products Corp.,* 731 F.2d 775 (5th Cir.1984); *compare Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 165 n. 13, 101 S.Ct. 1614, 1621 n. 13, 68 L.Ed.2d 1 (1981) (federal law shall govern issues arising in negligence actions under LHWCA section 5(b)) *with Edmonds v. Compagnie Generale Atlantique,* 443 U.S. 256, 272 n. 31, 99 S.Ct. 2753, 2762 n. 31, 61 L.Ed.2d 521 (1979) ("our decision [concerning proportionate fault rule in section 5(b) cases] does not necessarily have any effect on situations where … the third-party action is not governed by the principles of maritime law"). I am able to withhold decision on these troublesome issues because both Pennsylvania law and federal maritime law provide for contribution among joint tortfeasors, where both are actively negligent. *Cooper Stevedoring Co. v. Fritz Kopke, Inc.,* 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974); *Eckrich v. DiNardo,* 283 Pa.Super. 84, 423 A.2d 727 (1980). Accordingly, I find the *General Dynamics* case distinguishable. Pittsburgh-Corning's sixth claim is permissible under the governing law of contribution, be that law federal or state.

### 4. Conclusion

The United States has not argued that Pittsburgh-Corning's sixth claim for relief fails to satisfy the requirements laid out in *Scindia Steam Navigation Co., supra,* for stating a claim for negligence under section 5(b). That question is therefore not properly before me.

For the foregoing reasons, the United States' motion to dismiss or for summary judgment on Pittsburgh-Corning's sixth claim for relief shall be denied.

### E. Claims Brought Under the Tucker Act

Counts three and four of Pittsburgh-Corning's third-party complaint seek relief for breach of implied warranties. Jurisdiction is based on those portions of 28 U.S.C. § 1346(a)(2) which relate to contract disputes with the United States. Count three alleges that, when it sold asbestos to Pittsburgh-Corning, the United States impliedly warranted the asbestos' safety and its fitness for its intended purpose. Count four alleges that, by issuing specifications which called for the use of asbestos-containing products at the Philadelphia Naval Shipyard, the United States impliedly warranted that the use of those products would be safe for shipyard workers. Pittsburgh-Corning argues that the United States breached both these implied warranties.

■ Neither of these counts states a claim over which this court has jurisdiction under the Tucker Act. That Act creates jurisdiction over claims regarding express contracts or contracts implied in fact; it does not extend to claims based on contracts implied in law. *Merritt v. United States,* 267 U.S. 338, 341, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925). Thus, in order to establish jurisdiction under the Tucker Act, Pittsburgh-Corning must show that the contracts on which it claims arise from the intent of the parties as shown by (1) their written agreements, or (2) their conduct. Obligations imposed as a matter of equity or public policy cannot be the basis for Tucker Act claims. *Maine I, supra,* 581 F.Supp. at 972.

■ Applying this rule to the implied warranty of safety which forms the basis for count three, it is clear that the warranty there alleged does not arise from any express or implied agreement on the part

of the United States. The affidavits submitted by the United States establish that the United States sold asbestos "as is" and that the sales contracts expressly disclaimed all warranties. Affidavit of John G. Harlan, Jr. ¶ 19; Affidavit of Readus B. Long ¶ 4; Attachment A to Long Affidavit at ¶ 2. Pittsburgh-Corning has not contradicted the United States' evidence on this point, arguing instead that there was a "tacit understanding" that the United States guaranteed the asbestos' fitness for its intended use. The written sales agreement shows, however, that all risks associated with the product's "fitness for any use or purpose" were shifted to the buyers of asbestos. Attachment A to Long Affidavit at ¶ 2. The parties to the sales contracts agreed to this distribution of product-related risks. Any implied warranty of safety or fitness for intended use must therefore arise, not from the parties' agreement, but from operation of nonconsensual rules of law. Such a claim does not satisfy the requirements of the Tucker Act.

The claims based on Government specifications fail for the same reason. The United States bought asbestos-containing products from Pittsburgh-Corning, but the specifications on which count four is based do not concern the makeup of those products. Rather, the specifications regard repair and construction work performed at the shipyard. There may be some basis for a claim by the contractors performing the repair work that the United States impliedly warranted that work performed according to its specifications would be safe for those involved. *United States v. Spearin,* 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166 (1918); *Ordnance Research v. United States,* 221 Ct.Cl. 641, 609 F.2d 462, 479 (1979). Such a warranty does not, however, comprise part of any agreement between the United States and the manufacturers which sold their asbestos-containing products to the United States. *In re All Asbestos Cases,* 603 F.Supp. 599, 610–11 (D.Hawaii 1984); *see also Correlated Development Corp. v. United States,* 214 Ct.Cl. 106, 556 F.2d 515, 523–25 (1977); *Housing Corp. of America v. United States,* 199 Ct.Cl. 705, 468 F.2d

922, 924 (1972); *Maine I, supra,* 581 F.Supp. at 973. Accordingly, Pittsburgh-Corning's fourth claim for relief also fails to satisfy the requirements of the Tucker Act. The contract counts of the third-party complaint shall be dismissed.

III. MOTIONS OF RAYMARK AND EAGLE–PICHER FOR LEAVE TO FILE THIRD–PARTY COMPLAINTS

The proposed third-party complaints of defendants Raymark and Eagle-Picher are in substance identical to Pittsburgh-Corning's third-party complaint. I have decided that all counts of Pittsburgh-Corning's complaint must be dismissed except for that part of count six which states a claim for negligence against the United States as vessel owner. My resolution of the motions of defendants Raymark and Eagle-Picher for leave to file third-party complaints against the United States will follow the same pattern. Both motions will be denied as to all claims except those for negligence against the United States in its capacity as vessel owner.

An appropriate order will follow.