**In re ALL MAINE ASBESTOS LITIGATION (PNS CASES).**

**Petition of UNITED STATES of America.**

**No. 84–1779.**

United States Court of Appeals, First Circuit.

Argued Jan. 9, 1985.

Decided Sept. 18, 1985.

Opinion on Denial of Rehearing and Rehearing En Banc Oct. 30, 1985.

Joseph B. Cox, Jr., Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., with whom David S. Fishback, Torts Branch, Civil Div., U.S. Dept. of Justice, Harold J. Engel, Asst. Director, Peter A. Nowinski, Special Litigation Counsel, Washington, D.C., Richard S. Cohen, U.S. Atty., Portland, Me., and Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., were on brief for petitioner.

Jeffrey Silberfeld with whom Rivkin, Leff, Sherman & Radler, James G. Goggin and Verrill & Dana, Portland, Me., were on brief for Pittsburgh Corning Corp.

Mark G. Furey, Portland, Me., with whom Thomas R. McNaboe and Thompson,

McNaboe & Ashley, Portland, Me., were on brief for Raymark Industries, Inc.

Edward M. Fogarty, New York City, with whom Donald W. Fowler, Joe G. Hollingsworth, William J. Spriggs, Spriggs, Bode & Hollingsworth, Washington, D.C., John R. Linnell and Linnell, Choate & Webber, Auburn, Maine, were on brief for Eagle-Picher Industries, Inc.

Before COFFIN, BOWNES and TORRUELLA, Circuit Judges.

BOWNES, Circuit Judge.

This interlocutory appeal regarding third-parties' claimed right to proceed against the United States for noncontractual indemnity or contribution constitutes one more step toward a determination of who shall be ultimately liable for the injuries to workers resulting from their exposure to asbestos in the Portsmouth Naval Shipyard (PNS). All of the workers whose injuries are the subject of the primary actions in this portion of the Maine asbestos cases are present or former civilian federal employees of PNS located at Kittery, Maine. In numerous individual actions,[1] the workers or their representatives (plaintiffs), sued twenty-six manufacturers and distributors (defendants) for occupational disease or wrongful death caused by their exposure to asbestos dust that was created by the manufacturers' asbestos products. This exposure allegedly occurred while the workers were performing construction or repair work on U.S. naval vessels.

According to the complaints, plaintiffs seek to recover compensatory and punitive damages for injuries caused by the breach of required duties of care. Specifically, plaintiffs charge the defendant manufacturers with failure to use reasonable care in providing warnings to workers about the products' dangers and about the proper precautions to be taken when working with or near their asbestos products; failure to test their products and conduct safety re-search on them; and failure to remove the products from the market. Hence, the causes of action asserted are based on negligence, strict liability, and breach of express and implied warranties. Jurisdiction is based upon diversity of citizenship. *Austin v. Unarco Industries, Inc.*, 705 F.2d 1, 3 (1st Cir.), *cert. dismissed*, 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983).

No suit was brought by any plaintiff against the government on any theory. As government employees, their exclusive remedy against the United States was under the Federal Employees' Compensation Act, 5 U.S.C. §§ 8101, 8116(c), which provides no-fault compensation for work-related injury or death.

Shortly after the filing of plaintiffs' complaints, defendants sought to implead the United States as a third-party defendant. Defendants charged that the United States had breached various contractual and tort duties of care to them and to the federal employees. Judge Gignoux, who has shepherded these consolidated actions since their inception, directed defendants to file a model third-party complaint containing all the theories they sought to press in their third-party actions. The pertinent complaint thereafter filed[2] contained nine separate counts. In response to the United States' motion, the district court dismissed all but one count of the model third-party complaint and reserved judgment on Count VI. *See In re All Maine Asbestos Litigation*, 581 F.Supp. 963, 980–81 (D.Me.1984). Count VI, which seeks noncontractual indemnification and/or contribution,[3] is predicated upon the Federal Tort Claims Act (hereinafter FTCA), 28 U.S.C. §§ 1346(b), 2671 *et seq.* The FTCA provides, *inter alia*, that subject to certain exceptions, the government "shall be liable" in tort "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

---

1. The district court declined to certify any class actions.

2. Defendants actually filed two third-party complaints against the United States. The first, designated "Model Third-Party Complaint A," was filed in reference to cases where the injured worker was employed by Bath Iron Works, a *private* shipyard. In contrast, Model Third-Party Complaint B, the subject of this appeal, was filed in reference to cases where the injured worker was a *government* employee at Portsmouth Naval Shipyard.

3. The defendant manufacturers do not concede that the other eight counts were properly dismissed, but this question is not before us; although the district court certified its disposition of all nine counts, we accepted for interlocutory appeal only Count VI.

The district court denied the government's motion to dismiss Count VI in a supplemental opinion. *In re All Maine Asbestos Litigation (PNS Cases)*, 589 F.Supp. 1571 (D.Me.1984). The court held that under the analytical approach mandated by the FTCA, the liability of the United States would be determined on the basis of the law a Maine court would apply to an analogous private shipyard employer. Applying Maine law, the court held that it was unclear whether Maine courts would recognize the "dual capacity" doctrine as a means of imposing liability on a workers' compensation-paying shipyard employer which is also a ship owner, as the United States is in this instance. While Maine law clearly prohibits any form of additional liability, including third-party liability, imposed upon employers covered by the state workers' compensation statute, the district court found that it was not clear whether this protection extended to a third-party claim for noncontractual indemnity or contribution brought against a compensation-paying private employer in its capacity as a vessel owner. The district court was of the opinion that the only appropriate course was to certify the question to the Supreme Judicial Court of Maine, and that it would do so after a trial on the merits.[4]

■ At the United States' request, the question whether Count VI, too, should have been dismissed was certified and accepted for interlocutory appeal.[5] This count contains two distinct theories of recovery. First, defendants press what may be summarized as land-based theories, *i.e.*, alleged negligence of the government in its capacities as the plaintiffs' employer and as the owner of the shipyard. Second, defendants seek contribution or indemnity from the United States because of its alleged status as owner of the vessels on which the

underlying plaintiffs worked at the time of their asbestos exposure. The gravamen of the claim is that, as the owner of the ships being constructed or repaired, the United States failed to exercise the appropriate level of care regarding the conditions under which the workers performed their duties, a dereliction of duty which allegedly was the proximate cause of the workers' injuries. Defendants base their second claim on the Longshore[6] and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b). Whether either theory of liability contained in Count VI should have been dismissed is the question before us at this time, and we discuss their merits separately.

## I. LAND-BASED THEORIES OF LIABILITY

### A

■ The defendants allege that governmental third-party liability exists because the underlying plaintiffs' land-based exposure to asbestos was a result of the government's negligence in its capacity as employer and as shipyard owner. The government replies that the "only ruling timely brought to this Court ... [is] the government's appeal of the district court's adverse ruling as to the vessel owner claim." The government argues that the denial of appellee's petition to bring all other issues before this court on interlocutory appeal "precludes consideration of the manufacturers' claims other than that against the government *qua* vessel owner."

The government is correct that this court allowed interlocutory appeal on only the denial of the dismissal of, or alternatively, of summary judgment on, Count VI. We do not, however, read Count VI as narrowly as the government. In Count VI, defendants allege claims against the government not only in its capacity as a vessel

---

4. The Maine Supreme Judicial Court has indicated that before answering a certified question, it would prefer to have a record showing that the certified question will be dispositive of the case. *See* Maine R.Civ.P. 76B(a); *White v. Edgar*, 320 A.2d 668, 677 (Me.1974); *In re Richards*, 223 A.2d 827, 833 (Me.1966); *see also Gagne v. Carl Bauer Schraubenfabrick*, 595 F.Supp. 1081, 1088 (D.Me.1984).

5. For some reason the parties failed to comply with the responsibilities imposed upon them by Fed.R.App.P. 10 and 11, and Local App.R. 8(b), *viz.*, that they assemble and file the record in this case. The only papers this court received

were a copy of Model Third-Party Complaint B, the United States' answer, and a copy of the Master Docket for *In re All Maine Asbestos Litigation*. The court, on its own initiative, had to examine the papers on file in the district court. The parties were not released from their responsibilities to assemble the record merely because this was an interlocutory appeal.

6. Congress has modified the name of the Act by changing "Longshoremen" to "Longshore." *See* Longshore and Harbor Workers' Compensation Act Amendments of 1984, Pub.L. No. 98–426, § 27(d).

owner but also "as the owner of the shipyards ... the designer of the specifications ..., and as the general supervisor of the work performed...." Model Third-Party Complaint B, ¶ 39. Although the district court stated that "Count VI ... does not ... assert a claim against the United States in its capacity as an employer, but in its capacity as a vessel owner," we think that Count VI on its face encompasses employer and shipyard owner theories.

Regardless of the fact that the district court did not read Count VI as stating a claim against the government *qua* employer, it discussed and applied the relevant situs law that governs land-based employers as an analytical step in its disposition of the vessel owner claim. We do not think, therefore, that the district court's failure to make a separate ruling on the land-based theories of liability bars our review of them. No prejudice will result to either party and we have all the facts necessary for such a review.

### B

■ As the district court noted, "[i]t is undisputed that the PNS employees and deceased employees in these cases were covered by the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8101 *et seq.*, and that they are barred from suing the United States as their employer by FECA's exclusive liability provision, 33 U.S.C. § 8116(c)." Interpreting these provisions recently, the Supreme Court held that "FECA's exclusive-liability provision, 5 U.S.C. § 8116(c), does not directly bar a third-party indemnity action against the United States." *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 199, 103 S.Ct. 1033, 1038, 74 L.Ed.2d 911 (1983).

The Court added, however, that other substantive law affirmatively granting the right to proceed against the government must be identified in order to maintain such a third-party action. *See id.* at 197 n. 8, 199, 103 S.Ct. at 1037 n. 8, 1038; *accord Prather v. Upjohn Co.*, 585 F.Supp. 112, 114 (N.D.Fla.1984). Consequently, we find that the district court was correct in turning initially to the substantive provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80, on which jurisdiction for Count VI is predicated, to determine whether defendants could maintain their action.

### C

■ The Federal Tort Claims Act is a limited waiver of sovereign immunity that subjects the United States to tort liability within certain parameters. The FTCA provides in pertinent part:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. § 2674. The waiver extends to third-party claims against the government. *United States v. Yellow Cab Co.*, 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951). And it extends to third-party claims against the government for losses incurred by third-parties as the result of injuries to federal employees covered by FECA where other applicable substantive law grants a right of recovery. *Lockheed*, 460 U.S. at 198, 103 S.Ct. at 1038.

■ Section 2674 is amplified by a sister provision stating that, subject to certain exceptions, federal district courts are granted subject matter jurisdiction over claims to redress injury caused by any employee of the government "under circumstances where the United States, *if a private person*, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred.*" 28 U.S.C. § 1346(b) (emphasis added). To identify the applicable rule of substantive law, the FTCA directs us to determine the substantive law that would apply to "a private individual under like circumstances" in the jurisdiction where the injury occurred. We therefore look to whether a private person in like circumstances would be liable under the law of Maine, the situs state. *United States v. Muniz*, 374 U.S. 150, 153, 83 S.Ct. 1850, 1853, 10 L.Ed.2d 805 (1963); *Brooks v. A.R. & S. Enterprises, Inc.*, 622 F.2d 8, 10 (1st Cir.1980).

All parties agree with the district court that "a private individual under like circumstances" is a compensation-paying private shipyard employer in Maine. They differ, however, on what kind of compensation system is to be ascribed to the analogous private employer for purposes of the FTCA analysis. The defendant asbestos manufacturers contend that the analogous pri-

vate employer is a private shipyard employer with a FECA-like workers' compensation system. The United States and the district court posit that an analogous private shipyard employer would be covered under the Maine Workers' Compensation Act (the Maine Act or MWCA), 39 Me.Rev.Stat.Ann. § 1 *et seq.* (1978 & Supp.1984–85).

In the companion case of *Drake v. Raymark Industries, Inc.*, 772 F.2d 1007 (1st Cir.1985), we determined that a compensation-paying private shipyard employer in Maine, Bath Iron Works, was concurrently covered by both the Maine Act and Longshore and Harbor Workers' Compensation Act. We held that both Acts barred contribution and noncontractual indemnity actions, such as defendants seek to maintain here, against a compensation-paying employer. The *Drake* ruling governs the question here and requires that defendants' third-party claims against the government in its capacity as employer be dismissed. *See id.* at 1019–22.

Defendants argue, however, that § 4 of the Maine Act bars none of their claims because that statute by its terms cannot apply to the United States. For the same reason, neither could the Longshore Act apply to the government. This latter argument, however, was not made by defendants undoubtedly because it would have negated their vessel owner negligence claim predicated on the application of the Longshore Act to the United States despite the government's exclusion from its coverage. Nevertheless, they contend that considering the United States as "a private individual under like circumstances" as the FTCA mandates, the proper analogy is a private employer covered by FECA and not by the Maine Act. Under such an approach, the type and provisions of the applicable workers' compensation system is one of the "circumstances" that must be factored into the analysis. The appropriate analogy, therefore, is a private shipyard employer covered by a workers' compensation scheme like FECA, with an exclusivity provision worded and interpreted like that of FECA. Because *Lockheed* held that FECA's exclusivity provision did not bar third-party actions such as this, the defendants claim that Count VI's land-based theories of liability may proceed. In their view, the Maine Act's exclusivity provision is simply inapplicable and irrelevant.

We find this reasoning unpersuasive. A private shipyard employer in Maine, as is Bath Iron Works, would be covered by the MWCA as well as the LHWCA, and the FTCA defines the United States' liability as that of "a private individual in like circumstances." 28 U.S.C. § 2674. As one court has noted,

unless the phrase "under like circumstances" is read to nullify the phrase "private individual" and not to modify it, [the state compensation scheme] must apply to [third-party plaintiffs'] claims. It is of course possible to argue that FECA is one of the "circumstances" which define the liability of the United States as a shipyard employer; FECA does not, however, apply to a "private individual." Applying FECA would therefore be facially inconsistent with the language of the FTCA.

*Colombo v. Johns-Manville Corp.*, 601 F.Supp. 1119, 1128 (E.D.Pa.1984). *Accord Roelofs v. United States*, 501 F.2d 87, 92–93 (5th Cir.1974) (state workers' compensation system, including defenses available to covered employers, is the law applied to the United States under FTCA even though the government was not in actuality covered under the state compensation law); *see also Stewart v. United States*, 716 F.2d 755, 765 (10th Cir.1982) (same), *cert. denied,* — U.S. ——, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984). We hold that these land-based third-party claims are barred by § 4 of the Maine Workers' Compensation Act and 33 U.S.C. § 905(a).

## II. THIRD–PARTY LIABILITY OF THE UNITED STATES AS VESSEL OWNER UNDER § 905(b)

In Count VI of Model Third-Party Complaint B, defendant manufacturers also press a claim against the United States for shipowner negligence, purportedly based on the Longshore and Harbor Workers' Compensation Act (LHWCA or Longshore Act), 33 U.S.C. § 905(b). They cite the FTCA as again providing the necessary waiver of sovereign immunity.

Although federal workers are expressly excluded from LHWCA coverage, *see* 33 U.S.C. § 903(a)(2), defendants contend that by employing the FTCA analogical method properly, this exclusion is rendered irrelevant. Defendants reason that "a private person under like circumstances" to the

United States, 28 U.S.C. § 2674, is a vessel owner. Applying the law of the place as required by the FTCA, 28 U.S.C. §§ 1346(b), 2674, means whatever law, and choice of law rules, the locality would apply in a given case, *Richards v. United States,* 369 U.S. 1, 11–13, 82 S.Ct. 585, 591–593, 7 L.Ed.2d 492 (1962); *Hess v. United States,* 361 U.S. 314, 318 n. 7, 80 S.Ct. 341, 345 n. 7, 4 L.Ed.2d 305 (1960). Defendants claim that federal substantive law, and specifically, the Longshore Act, would have to be utilized by Maine courts to determine the viability of the shipowner negligence claim. *See Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983); *Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, at 165 n. 13, 101 S.Ct. 1614, at 1621 n. 13, 68 L.Ed.2d 1 (1981) (negligence actions that are brought against the shipowner pursuant to § 905(b) are governed by federal maritime principles).

 We doubt whether we can ignore an express congressional exclusion of federal workers from coverage under the LHWCA, and employ an FTCA analogy by which coverage can be analogically presumed so as to render the United States vulnerable to a shipowner negligence suit. It is well-established that the terms of the waiver as set forth expressly and specifically by Congress define and delimit the boundaries of the court's subject matter jurisdiction to entertain suits brought against the government. *See United States v. Orleans,* 425 U.S. 807, 813–14, 96 S.Ct. 1971, 1975–76, 48 L.Ed.2d 390 (1976); *Dalehite v. United States,* 346 U.S. 15, 30–31, 73 S.Ct. 956, 965, 97 L.Ed. 1427

(1953). Where a provision of the FTCA excludes what would otherwise be a potential cause of action, no action against the government is permitted. *See, e.g., United States v. S.A. Empresa de Viacao (Varig Airlines),* —— U.S. ——, 104 S.Ct. 2755, 2762, 81 L.Ed.2d 660 (1984). Moreover, where other federal policies, express or implied, preclude what would otherwise be a potential cause of action, no action against the government may stand. *See Johansen v. United States,* 343 U.S. 427, 436–40, 72 S.Ct. 849, 855–57, 96 L.Ed. 1051 (1952); *see also Laird v. Nelms,* 406 U.S. 797, 802–03, 92 S.Ct. 1899, 1902–03, 32 L.Ed.2d 499 (1972).[7] But we shall bracket these FTCA-based concerns and assume for the purposes of our analysis that defendants seek to maintain a third-party contribution and indemnity action against a private shipyard which owns the ships on which the plaintiffs worked with and proximate to asbestos products.

 So stated, this question is also governed by our opinion in *Drake v. Raymark Industries.* In *Drake* we held that defendant manufacturers' third-party claim against a private shipyard as owner *pro hac vice* would not lie under § 905(b) because that section countenances only maritime torts. *Drake v. Raymark Industries, Inc.,* at 1012. Since to qualify as a maritime tort the wrong must have borne some relationship to "traditional maritime activity," *Executive Jet Aviation v. Cleveland,* 409 U.S. 249, 261, 93 S.Ct. 493, 501, 34 L.Ed.2d 454 (1972), and the universal ruling of all circuits to have considered this type of wrong is that it does not bear such a

**7.** Unfortunately, *Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983), does not dispose of this FTCA thicket. In *Lockheed* the Court was confronted with determining whether the exclusivity provision of FECA, 5 U.S.C. § 8116(c), barred a properly-brought FTCA action that the underlying substantive law otherwise would have permitted. Here, we are concerned with more fundamental questions, such as whether the underlying substantive law authorizes defendants' vessel owner negligence action, and additionally, whether we are required to deem an express exclusion of the United States from coverage under the LHWCA overridden by the FTCA.

It seems likely that the express exclusion of federal employees raises a bar to the third-party shipowner action sought here, similar to that

recognized in *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977) (*Feres* doctrine will not be overridden for third parties). For us to permit a vessel owner suit against the government in these circumstances would likely be "to judicially admit at the back door that which has been legislatively turned away at the front door." *Stencel Aero Engineering,* 431 U.S. at 673, 97 S.Ct. at 2059 (quoting *Laird v. Nelms,* 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499; *In re Agent Orange Product Liability Litigation,* 506 F.Supp. 762, 772 (E.D.N.Y.1980) ). Because the substantive law question is dispositive, and rests on well-established legal principles, we do not determine the impact of the LHWCA exclusion of federal employees on defendants' third-party action.

relationship, *see Drake,* at 1015–16;[8] no § 905(b) action could have been brought by plaintiffs against the owners of the ships on which they were doing construction or repair work. It follows that defendants have no contribution action under the section, either, since the only duties alleged to have been owed were owed to the employees, not the defendants. Accordingly, we rule that defendants' contribution and indemnity action against the third-party defendant based upon § 905(b) must be dismissed for failure to state a claim on which relief can be granted.

■ The district court did not analyze the defendants' vessel owner contribution action as we have.[9] It did hold that federal substantive law did not provide defendants with a vessel owner action against the government, a result that accords with our own. The district court went further, however, and held that the action would lie, if at all, on the basis of a Maine recognition of the dual capacity doctrine. The court then noted that it was unclear whether Maine recognizes the dual capacity doctrine, and within that doctrine, whether vessel owner status would be considered distinct enough from the employer capacity to eliminate the immunity from certain suits that employers enjoy under Maine law. Accordingly, the district court ruled that the question would be certified to the Maine Supreme Judicial Court following a trial on the merits. We disagree.

As we explained in *Drake,* the negligence action against a vessel owner from which defendants seek to derive their contribution action was created by Congress as a part of the 1972 LHWCA Amendments. This negligence action was designed to replace the former action for unseaworthiness, a strict liability action.' *See* H.R.Rep. No. 92–1441, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.Code Cong. & Ad.News 4698, 4701–05. Maine does not provide a specific cause of action against vessel owners; it would lie, if at all, as an extension of the basic negligence action, and only outside of admiralty jurisdiction, which is exclusively federal.

As we noted in *Austin v. Unarco,* where we decided that admiralty jurisdiction would not lie for a ship construction and repair worker's claims of asbestos-engendered injuries:

> [T]he risk encountered by plaintiff's decedent is not a risk arising from the loading or operation of a vessel, against which those on the vessel are typically protected by the vessel owner. It is, rather, *the same risk as that encountered by a number of workers on a shortside construction project.*
>
> Whatever anomalous results may follow from distinguishing between harbor workers according to the maritime nature of the hazards they encounter are at least offset, if not outweighed, by the anomalous results of treating construction workers injured by asbestos poisoning differently depending on whether they were installing asbestos in a ship or in an office building overlooking the harbor. *The state has an interest in providing uniform treatment to these two like workers.*

705 F.2d at 13 (emphasis added).

Defendants have not cited us any authority that suggests that the Maine Supreme Judicial Court would likely recognize the dual capacity doctrine. Indeed, the language employed in its cases suggests the contrary. For instance, in *Roberts v. American Chain & Cable Co.,* 259 A.2d 43 (Me.1969), the Maine Court stated:

> Our act ... is so general in terminology as to generate the belief that the Legislature may have intended *an all-embracing immunity* in favor of the employer

---

**8.** *See also Oman v. Johns-Manville Corp.,* 764 F.2d 224 (4th Cir.1985) (*en banc* overruling of *White v. Johns-Manville Corp.,* 662 F.2d 234 (4th Cir.1981) ); *Myhran v. Johns-Manville Corp.,* 741 F.2d 1119 (9th Cir.1984); *Harville v. Johns-Manville Products Corp.,* 731 F.2d 775 (11th Cir. 1984); *Lowe v. Ingalls Shipbuilding,* 723 F.2d 1173, 1187–90 (5th Cir.1984); *Austin v. Unarco Industries,* 705 F.2d 1 (1st Cir.1983); *cf. Keene Corp. v. United States,* 700 F.2d 836, 843–45 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

**9.** Neither, to our knowledge, has any other court analyzed the availability of a third-party contribution action under § 905(b) in this manner. *See, e.g., In re All [Hawaii] Asbestos Cases,* 603 F.Supp. 599, 605–606 (D.Hawaii 1984) (on motion for reconsideration); *Colombo v. Johns-Manville Corp.,* 601 F.Supp. 1119, 1132–39 (E.D. Pa.1984); *In re General Dynamics Asbestos Cases,* 602 F.Supp. 497 (D.Conn.1984).

cutting across any equitable considerations which our courts in the application of equitable principles might otherwise apply.

259 A.2d at 46 (emphasis added); *see also McKellar v. Clark Equipment Co.*, 472 A.2d 411, 416 (Me.1984) (following *Roberts*) ("The employer's immunity, as defined in *Roberts*, extends to all noncontractual rights of contribution and indemnity" (citations omitted)). Were a suit against a vessel owner to be recognized, it would likely result from the creation of a separate liability for employers for the condition of their premises. But, as Professor Larson has noted, the state courts have "held with virtual unanimity" that workers' compensation-covered employers cannot be sued by their employees on premises liability theories. 2A Larson, The Law of Workmen's Compensation § 72.82, at 14–234 (1983). The obvious reason for these holdings is that "[i]f every action and function connected with maintaining the premises could ground a separate tort suit, the concept of exclusiveness of remedy would be reduced to a shambles." *Id.* at 14–238. Accordingly, defendants' claims against the government in its capacity as vessel owner—a premises liability theory—are also barred. *See Columbo v. Johns-Manville*, 601 F.Supp. at 1131 ("The obligation of the United States to provide a safe workplace and to warn employees about the hazards of certain materials arises solely out of the employment relationship. There is, in effect, no alternative capacity in which to sue an employer on these theories"). *Id.* at 14–238. As the government points out, there are no reported cases even hinting that Maine might deviate from the universal view.

■ To summarize, defendants have not shown that Maine or any other state has recognized and allowed a suit against an employer *qua* vessel owner under the rubric of dual capacity. Because it has its roots in admiralty, which is within exclusively federal jurisdiction, we find it difficult to believe that such a suit would be recognized in Maine. We think, therefore, that under these circumstances certification is not necessary on either the dual capacity doctrine or on the availability of a suit against an employer *qua* vessel owner.[10]

*Affirmed in part and vacated in part.*

### ORDER OF COURT

The petition for rehearing and rehearing en banc is denied.

Petitioner asserts that an analysis under *Harville v. Johns-Manville Products Corp.*, 731 F.2d 775 (11th Cir.1984), would indicate that its third-party claim bears a sufficient relationship to traditional maritime activity. It seeks to distinguish the cases we cite on the ground that they have not involved a suit by a shipyard worker against a *shipowner* for failure to warn of dangers of asbestos on ships brought to a yard for repair.

■ We pass over the question whether the absence of an actual suit against BIW by plaintiff would itself defeat petitioner's third party claims. We proceed to what we deem the controlling *Harville* factor in our cases, whether the need for uniformity in maritime commerce mandates application of admiralty law. Although petitioners

---

**10.** Appellee Pittsburg-Corning argues that the United States may be held liable under a *pro tanto* theory of recovery. This contention runs as follows. Under Maine law, an employer who pays workers' compensation benefits may assert a lien on an employee's recovery from a third-party. Therefore, if the negligence of the United States *qua* employer contributes to the injuries of any of the plaintiffs, the United States should be denied its lien to the extent of its proportionate (*pro tanto* ) share of the damages, and any judgment against the defendants should be reduced by an amount equal to the portion of the lien denied.

As the government points out, however, the defendants did not specifically allege entitle-

ment to *pro tanto* relief in their model complaint against the government. This omission contrasts sharply with the same parties' action in the *BIW Cases* where they specifically alleged in Count I a right to *pro tanto* relief. *See BIW Cases*, 589 F.Supp. at 1566. Moreover, we discovered nothing in our review of the record indicating that defendants ever presented this theory to the district court and they make no specific claim that the theory was advanced below. Accordingly, the question of *pro tanto* relief is not properly before us. Even if it were, the Maine Supreme Judicial Court has very recently rejected defendants' position. *See Diamond International Corp. v. Sullivan & Merit, Inc.*, 493 A.2d 1043 (Me.1985).

make a reasonable argument that a shipowner's duty to warn workers of dangers hidden on board should be governed by a uniform maritime law, we think the better approach is to see this as a situation appropriately left to state tort law. If Drake has sued BIW as *pro hac vice* vessel owner for failure to warn or protect against a dangerous condition, the questions would have been whether working with asbestos was dangerous and whether BIW knew or should have known of it. These are the same questions that would arise if Drake had worked with asbestos, without warning or protection, on a ship not owned by BIW, or in one of BIW's warehouses on land. As the court in *Harville* noted, the issues that such litigation would have presented "are identical to those presented in countless other asbestos suits; they involve questions of tort law traditionally committed to local resolution." *Harville*, 731 F.2d at 786.

Petitioner notes on page 14 of the petition that the "Court on its own motion reviewed documents in the district court" and seems to suggest that this was beyond our scope of review. The only material that was forwarded to the clerk of the court of appeals for review was the appendix. Because of the importance of the case, the court felt that it would be wise to examine the entire record. In order to do this, the record had to be obtained directly from the clerk of the district court in Portland, Maine. It is the custom of this court, in cases that require it, to examine the record in detail and not to rely entirely on the appendix.