**EAGLE–PICHER INDUSTRIES, INC.**

v.

**UNITED STATES of America,
Appellant.**

No. 87–1361.

United States Court of Appeals,
Third Circuit.

Argued Dec. 7, 1987.

Decided May 10, 1988.

Joe G. Hollingsworth (argued), Spriggs, Bode & Hollingsworth, Washington, D.C., for appellee.

Robert N. Kelly (argued), Harold J. Engel, David S. Fishback, U.S. Dept. of Justice, Washington, D.C., for appellant.

Before GREENBERG, SCIRICA and HUNTER, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

This appeal presents three issues concerning the liability of the United States as a third party for asbestos-related injuries suffered by government shipyard workers. Specifically, we must address: (1) whether the United States is subject to third-party liability under the Longshore and Harbor Workers Compensation Act (LHWCA), 33 U.S.C. § 905(b) (1982); (2) if, in order to sue under § 905(b), a party must also satisfy the requirements for admiralty jurisdiction, *see Executive Jet Aviation v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); and (3) in the alternative, whether admiralty jurisdiction can provide an independent basis for subject matter jurisdiction, *i.e.*, did the underlying wrong bear a significant relationship to traditional maritime activity. *See id.* at 268, 93 S.Ct. at 504.

As is often the case when complex issues are presented for appellate review, we benefit from the efforts of other courts that have decided similar cases. Our task is simplified when we are able to draw on another jurist's thorough analysis, and when the process itself is used to examine and refine the dispositive legal issues. These principles are especially applicable here, where the district judge carefully adjudicated a plethora of issues concerning the liability of the United States to asbestos manufacturers sued by government shipyard workers.

Our inquiry requires examination of two decisions of the district court: *Eagle–Picher Indus., Inc. v. United States*, 657 F.Supp. 803 (E.D.Pa.1987), the subject of this action, and *Colombo v. Johns–Manville Corp.*, 601 F.Supp. 1119 (E.D.Pa. 1984), which formed the basis for the decision in *Eagle–Picher*. In *Eagle–Picher*, the court denied the United States' motion to dismiss Eagle–Picher's, the asbestos manufacturer, suit for contribution. The court held: (1) it had jurisdiction under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2674 (1982), which would permit Eagle–Picher to maintain a third-party action for contribution against the United States under § 905(b) of the LHWCA; and (2) under the LHWCA, Eagle–Picher need not satisfy the general admiralty jurisdiction requirement that the underlying wrong had a significant relationship (*i.e.*, a nexus) to a traditional maritime activity. *Executive Jet Aviation v. City of Cleveland*, 409 U.S. at 268, 93 S.Ct. at 504. By declining to apply admiralty principles to an LHWCA claim, the court concluded that Eagle–Picher stated a claim under the LHWCA by demonstrating that the injured worker was engaged in maritime employment pursuant to 33 U.S.C. § 902(3). *See Eagle–Picher*, 657 F.Supp. at 805–06, 811–14.

The district court's decision rested on a controlling question of law and because immediate appeal would "materially advance the ultimate termination of the litigation," *id.* at 814 (quoting 28 U.S.C. § 1292(b)), the court certified an interlocutory appeal. We granted the United States permission to appeal the following questions:

1. Whether the limitation on the liability of the United States contained in the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8116(c), precludes the assertion by Eagle–Picher of its claim against the United States for contribution/indemnity, given that the Eagle–Picher claim arises under 28 U.S.C. § 2674 which provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances...."

2. Whether (assuming Eagle–Picher's claim is not foreclosed by the answer to question 1) Eagle–Picker, in order to support its claim, must, in addition to establishing that Mr. Press was injured on navigable waters while "engaged in maritime employment," 33 U.S.C. § 902(3), make an independent showing that the wrong which befell Mr. Press bore "a significant relationship to traditional maritime activity." *Executive Jet Aviation v. City of Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972).

Although our scope of review is generally governed by the legal questions in the district court's certification order, we may "consider all grounds that might require reversal of the order appealed from." *In re Data Access Systems Securities Litigation*, 843 F.2d 1537, 1539 (3d Cir.1988) (en banc) (citing *Merican, Inc., v. Caterpillar Tractor Co.*, 713 F.2d 958, 962 n. 7 (3d Cir.1983), *cert. denied*, 465 U.S. 1024, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984); *Akerly v. Red Barn Sys., Inc.*, 551 F.2d 539, 543 (3d Cir.1977)); *see also Simon v. G.D. Searle & Co.*, 816 F.2d 397, 400 (8th Cir.),

*cert. denied,* —— U.S. ——, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987). With respect to the first question, we conclude that Eagle–Picher cannot assert its claim against the United States, and we will reverse the judgment of the district court. The primary basis for our holding, however, is a rationale other than that suggested by the district court in its certification order. Although we agree with the government that the United States' FECA immunity from suit is a significant circumstance that must be considered under the FTCA,[1] we hold that § 903(b)'s express exclusion of federal employees from the coverage of the LHWCA bars a direct LHWCA action by a federal employee against the government. As a result, the § 903(b) exclusion also bars Eagle–Picher's ensuing third-party action for contribution/indemnity.

By holding that Eagle–Picher's claim is foreclosed by our resolution of the first certified question, we obviate the need to decide the second question whether a § 905(b) cause of action must also satisfy the requirements for admiralty jurisdiction.[2] Eagle–Picher, however, suggests that regardless of the LHWCA's applicability, the district court could have exercised admiralty jurisdiction over this dispute.[3] Under admiralty jurisdiction, the underlying injury must bear "a significant relationship to traditional maritime activity," *i.e.*, have a nexus to maritime activity. *See Executive Jet*, 409 U.S. at 268, 93 S.Ct. at 504. We conclude, as has every court of appeals to address the issue, that injured shipyard asbestos workers fail to satisfy the *Executive Jet* nexus test.

## I. FACTS

The parties agree on the basic facts. Between 1941 and 1979 Charles Press was

---

**1.** *See infra* n. 8.

**2.** We note only that the district court's holding, that § 905(b) of the LHWCA does not include the requirements of admiralty jurisdiction, conflicts with the First Circuit's treatment of the identical issue in *Drake v. Raymark Indus., Inc.*, 772 F.2d 1007, 1014 (1st Cir.1985), *cert. denied*, 476 U.S. 1126, 106 S.Ct. 1994, 90 L.Ed.2d 675 (1986), and the Fifth Circuit's holding in *Richendollar v. Diamond M Drilling Co., Inc.*, 819 F.2d 124, 125 (5th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987).

**3.** *See* J.A. at 3 (amended complaint ¶ 3, alleging jurisdiction under the FTCA or in the alternative "general admiralty and maritime law of the United States...."). In *Colombo v. Johns–Manville Corp.*, 601 F.Supp. 1119 (E.D.Pa.1984), the district court observed that it had subject-matter jurisdiction under either the FTCA or admiralty law. Although the court proceeded to analyze the dispute under the FTCA, it found it unnecessary, however, to elect between these two potential jurisdictional bases. *Id.* at 1132 n. 6.

employed by the United States Navy as a sheetmetal worker at the Philadelphia Naval Shipyard. During that time, Press was exposed to asbestos-based insulation products manufactured by Eagle–Picher and other firms. In 1979, Press and his wife filed suit in the Philadelphia Court of Common Pleas seeking damages from Eagle–Picher and twenty-one other manufacturers/distributors for injuries resulting from asbestos exposure. Press died in 1983 of asbestos-related injuries, and his wife pursued the 1979 suit. In 1984, she won a $575,000 verdict against Eagle–Picher and seven other defendants. Two months later Eagle–Picher settled its portion of the suit for nearly $68,000.

Eagle–Picher then sought contribution or indemnity from the United States. When the government took no action on the claim, Eagle–Picher filed suit in the district court, alleging jurisdiction under the FTCA, which renders the United States liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674. Although Eagle–Picher asserted several grounds for recovery, the district court held that only one theory—a negligence action based on § 905(b) of LHWCA against the government in its capacity as shipowner, not as Press's employer—provided a viable basis for contribution. *Eagle–Picher*, 657 F.Supp. at 805 (citing *Colombo*, 601 F.Supp. at 1132–39).

The court determined that had the United States been a private shipowner in Pennsylvania, employees like Press working on one of its ships could bring a negligence action against the shipowner under § 905(b) of the LHWCA. This was possible, the court noted, even though the Pennsylvania Workmen's Compensation Act (PWCA) is the exclusive remedy against Pennsylvania employers. Because the exclusivity provision of the PWCA, Pa.Stat. Ann. tit. 77, § 481 (Purdon Supp.1987–88), conflicts with the LHWCA's authorization of suits against employers who are also shipowners, the district court concluded that the LHWCA preempted the PWCA. As a result, the court held, because both federal and state law permit contribution among actively negligent joint tortfeasors, Eagle–Picher could maintain a third-party suit against the United States under § 905(b) of the LHWCA. *See generally Eagle–Picher*, 657 F.Supp. at 805–06 (citing *Colombo*, 601 F.Supp. at 1132–39).

## II. DISCUSSION

### A. *Jurisdiction Under the LHWCA*

The United States attacks the district court's analysis at its inception. It contends that the court erred by failing to include the government's immunity under the FECA as one of the "like circumstances" that must be considered under the FTCA's "private individual/under like circumstances" standard. By including the FECA immunity, *see* 5 U.S.C. § 8116(c) (1982), in the FTCA formula, the government maintains it cannot be analogous to a private Pennsylvania shipowner because no private shipowner possesses federal immunity from direct suit by its employees. Therefore, the government argues, if it is immune from direct suit, it is necessarily immune from a third-party suit. Eagle–Picher, meanwhile, contends that the government's argument is tautological: "[i]t argues that the FTCA waives the government's immunity in all cases except where the government is immune." Brief of Appellee at 17.

Under the FTCA, the government consents to suit "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Liability is determined by the law of the place where the wrong occurred—in this case, Pennsylvania. *See id.* § 1346(b).

 If the United States is not subject to direct suit under § 905(b) of the LHWCA, Eagle–Picher cannot maintain this third-party suit. Indeed, Pennsylvania law, which applies here, bars third-party actions against tortfeasors who are not directly liable. *See Builders Supply Co. v. McCabe*, 366 Pa. 322, 325–28, 77 A.2d 368, 370–71 (1951); *Eckrich v. DiNardo*, 283 Pa.Super. 84, 88 n. 2, 423 A.2d 727, 729 n. 2

(1980).[4] Direct liability in this context stems from Congress's 1972 LHWCA amendments that permit longshore workers to not only collect workers' compensation from their employer, but to also recover from the shipowner for negligence. *See* § 905(b); *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 165, 101 S.Ct. 1614, 1621, 68 L.Ed.2d 1 (1981). This liability applies "even when the longshoreman is employed directly by the vessel owner." *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 530, 103 S.Ct. 2541, 2547, 76 L.Ed.2d 768 (1983). Hence, although a vessel owner that is also an employer is immune from suit in its capacity as an employer by virtue of the workers' compensation scheme, it is subject to suit for negligence in its "dual capacity" as vessel owner.[5] Third-party liability follows, the parties agree, because the exclusivity provision of the LHWCA, *see* § 905(a), would allow third-party suits as long as they would be permitted under the applicable substantive law (*i.e.*, Pennsylvania law). *See Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 196–98 & n. 8,

103 S.Ct. 1033, 1037–38 & n. 8, 74 L.Ed.2d 911 (1983).[6]

Under the government's theory, however, courts would never reach the point of applying the LHWCA. Instead, the government contends the FECA provides the exclusive remedy for its employees and thereby renders it immune from negligence actions that could otherwise be brought against private shipowners. Under § 8116(c) of the FECA, the government pays injured employees immediate, fixed benefits without regard to fault in exchange for employees accepting the FECA as their exclusive means of recovery. *See Lockheed*, 460 U.S. at 193–94, 103 S.Ct. at 1036–37. At least one court has adopted the government's theory that "to consider the Government as a private employer covered by the LHWCA would be to ignore the FECA as a significant aspect of the Government's circumstances." *Lopez v. Johns Manville*, 649 F.Supp. 149, 155 (W.D.Wash.1986).

The district court concluded that like any other shipyard employer in Pennsylvania, the United States, by virtue of the FTCA, would be subject to the PWCA, which pro-

---

**4.** In Pennsylvania, a right of indemnity "enures to a person, who without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." *McCabe*, 366 Pa. at 325, 77 A.2d at 370. Thus, indemnity shifts the entire burden from one defendant to another, *see Svetz for Svetz v. Land Tool Co.*, 355 Pa.Super. 230, 242, 513 A.2d 403, 409 (1986), but only if the third party was primarily liable. *McCabe*, 366 Pa. at 326, 77 A.2d at 371.

Contribution, meanwhile, allows one defendant to force a concurrent or joint tortfeasor to "bear the common burden" by sharing damages. *McCabe*, 366 Pa. at 328, 336, 77 A.2d at 371, 375; *see generally Svetz*, 355 Pa.Super. at 239, 513 A.2d at 407.

For purposes of this appeal, we need not determine which theory Eagle–Picher's claim implicates. We note only that like indemnity, the right to contribution is predicated on a third-party's direct liability to the plaintiff.

Federal maritime law reaches the same result, allowing contribution among actively negligent joint tortfeasors. *See Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 109–10, 94 S.Ct. 2174, 2176–77, 40 L.Ed.2d 694 (1974).

**5.** In 1984, Congress amended the § 905(b) of LHWCA to prohibit suits against a shipowner

that is also the plaintiff's employer. The amended language reads:

> If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charter) or against the employees of the employer.

33 U.S.C. § 905(b). This amendment applies only to injuries after September 28, 1984, and is therefore not controlling here.

**6.** In *Lockheed*, the Court interpreted the nearly identical exclusivity provision of the FECA, 5 U.S.C. § 8116(c), and observed that the statutory language was concerned only with the rights of employees, not the "rights of unrelated third parties." *Lockheed*, 460 U.S. at 196, 103 S.Ct. at 1038. Therefore, the Court concluded, the exclusivity provision did not bar actions such as those asserted by Eagle–Picher. The Court noted, however, that the viability of such third-party actions depended on the underlying substantive law. *Id.* at 197–98 & n. 8, 103 S.Ct. at 1038–39 & n. 8.

vides that workers' compensation shall be the exclusive basis for liability against an employer.[7] *See Colombo*, 601 F.Supp. at 1127–29. The court then determined, however, that § 905(b) of the LHWCA created an independent cause of action against shipyard owners. *Id.* at 1136. The exclusivity provision in Pennsylvania's workers' compensation law, the court observed, cannot "annul the remedy offered" in the LHWCA. *Id.* The court distinguished between shipyard owners and shipyard employers, concluding that workers' compensation immunity did not bar suits pursuant to § 905(b) against an employer in its capacity as owner. Accordingly, the court explained, the LHWCA's authorization of negligence suits against shipowners provided a federal right of recovery against shipowner/employers that is superior to an employer's state immunity from suit. *Cf. Sun Ship Inc. v. Pennsylvania*, 447 U.S. 715, 724 n. 6, 100 S.Ct. 2432, 2438 n. 6, 65 L.Ed.2d 458 (1980) (state workers' compensation programs supplement federal LHWCA compensation, but if final state compensation award were less than an LHWCA award, federal law would preempt state law exclusivity provision); *Purnell v. Norned Shipping B.V.*, 804 F.2d 248, 250 n. ** (3d Cir.1986) (although state workers' compensation scheme may supplement federal benefits, it may not eliminate federal rights), *cert. denied*, —— U.S. ——, 107 S.Ct. 1576, 94 L.Ed.2d 767 (1987).

The difficulty with this reasoning is the assertion that § 905(b) of the LHWCA creates a cause of action for federal employees against the United States. To be sure, § 905(b) grants "a harbor worker the right to bring a negligence action against his employer in its capacity as vessel owner." *Colombo*, 601 F.Supp. at 1136. The LHWCA, however, expressly excludes federal employees, such as the plaintiff, from its coverage. Section 903(b), which sets forth the scope of the LHWCA's coverage, states:

> *Coverage*
>
> . . . .
>
> *(b) Governmental officers and employees*
>
> No compensation shall be payable in respect of the disability or death of an officer or employee of the United States, or any agency thereof, or of any State or foreign government, or any subdivision thereof.

33 U.S.C. § 903(b) (formerly § 903(a)(2)); *accord Lopez*, 649 F.Supp. at 155 ("LHWCA expressly excepts from coverage employees of the United States or any of its agencies"); *cf. In re All Maine Asbestos Litigation*, 772 F.2d 1023, 1029 (1st Cir.1985) ("[w]e doubt whether we can ignore an express congressional exclusion of federal workers from coverage under the LHWCA...."), *cert. denied*, 476 U.S. 1126, 106 S.Ct. 1994, 90 L.Ed.2d 675 (1986). Thus, because we hold that § 905(b) of the LHWCA creates no right of action on behalf of federal employees against the United States, the FTCA waiver of immunity is not implicated.[8]

---

7. The FECA also contains an exclusivity provision. 5 U.S.C. § 8116(c). The district court determined that the FECA did not bar the instant claims because in *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 195–96, 103 S.Ct. 1033, 1037–38, 40 L.Ed.2d 911 (1983), the Court concluded that § 8116(c) was not intended to bar third-party actions. *See Colombo*, 601 F.Supp. at 1126. Thus, the district court followed *Lockheed's* directive to examine the governing substantive law (Pennsylvania law) to determine whether a third-party could bring an indemnity/contribution against the United States.

The court did not, however, acknowledge that because of the FECA immunity, which is comparable to the PWCA immunity, "the United States should be entitled to the same immunity from suit enjoyed by private employer covered by state workers' compensation laws." *See LaBarge v. Mariposa County*, 798 F.2d 364, 367 (9th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1889, 95 L.Ed.2d 497 (1987).

8. Nonetheless, we agree that our decision could have been based on the more indirect rationale advocated by the government. The FECA bars a direct action by a government employee against the government. 5 U.S.C. § 8116(c). Although the FECA does not directly bar this third-party suit, *see Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 195–96, 103 S.Ct. 1033, 1037–38, 74 L.Ed.2d 911 (1983), the immunity it creates against suits by federal employees is a significant circumstance that we would have to consider under the FTCA, 28 U.S.C. § 2674. *See Lopez v. Johns–Manville*, 649 F.Supp. 149, 154 (W.D.Wash.1986).

Instead, we interpret the LHWCA in a manner consistent with Congress's express intent to extend LHWCA coverage only to private employees. Congress, in § 903(b), could not have been more explicit in denying coverage to government employees. Its decision to specifically exclude federal workers from the LHWCA overrides the FTCA's more general, and indeed indirect, reference to the government's LHWCA liability. "Specific terms prevail over the general in the same or another statute which otherwise might be controlling." *Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed.2d 704 (1932); *see also Busic v. United States*, 446 U.S. 398, 407, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 489–90, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973)); *Creque v. Luis*, 803 F.2d 92, 95 (3d Cir.1986); *see generally* 2A N. Singer, *Sutherland Statutory Construction* § 51.05, at 499–500 (4th ed. 1984). Thus, the LHWCA's exclusion of federal employees from its coverage is an exception to the government's general waiver of sovereign immunity in the FTCA.

Any other construction of the LHWCA would subject the United States to liability for harm to its employees under a statute that from its inception has barred government employees from its coverage. *See In re Maine Asbestos Litigation*, 772 F.2d at 1029; *Lopez*, 649 F.Supp. at 155. This express congressional exclusion of federal workers from LHWCA coverage precludes Eagle–Picher from using the FTCA to accomplish indirectly what federal employees could not accomplish directly.

We recognize, of course, that the LHWCA's § 903(b) exclusion of federal employees has been part of the statute since its enactment in 1927, *see Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 258 & n. 14, 97 S.Ct. 2348, 2354 & n. 14, 53 L.Ed.2d 320 (1977); H.R.Rep. No. 1767, 69th Cong.2d Sess. 2 (1927)—long before Congress codified the "dual capacity" shipowner negligence action in § 905(b). Thus, the § 903(b) exclusion could be viewed as encompassing only the workers' compensation aspect of the statute, not the subsequent statutory authorization of shipowner negligence suits.

Indeed, as originally enacted, the LHWCA was strictly a workers' compensation statute. Congress passed the LHWCA only after the Supreme Court held that states were powerless to extend their compensation laws to longshore workers injured "on the gangplank between a ship and a pier." *See Northeast Marine Terminal*, 432 U.S. at 257 & n. 12, 97 S.Ct. at 2354 & n. 12 (citing H.R.Rep. No. 639, 67th Cong., 2d Sess. 2 (1922)). As a result, Congress devised a federal compensation system to provide traditional workers' compensation benefits to longshore and harbor workers not covered by state compensation schemes. *Northeast Marine Terminal*, 432 U.S. at 257–58, 97 S.Ct. at 2353–54. This rationale also explains the exclusion of federal employees, who were covered by "another appropriate and sufficient form of compensation" under the FECA and the Military Claims Act, 10 U.S.C. §§ 2731–37 (1982). *See* 1A *Benedict on Admiralty* § 30, at 2–62 to 2–63 (1987).

The Supreme Court expanded the remedies available to injured longshore workers in 1946 when it held that the traditional seaman's action against a vessel owner for

---

The FECA immunity parallels the immunity provision of the PWCA, and hence, would have to be considered in determining whether Pennsylvania would allow this type of third-party suit. A similarly situated private employer in Pennsylvania would be immune from direct liability and contribution actions. Accordingly, "[t]he United States, by virtue of its compliance with the applicable worker's compensation law, FECA, is entitled to claim the immunity. To hold otherwise would be to place the United States in a position less favorable than that of any private employer" under Pennsylvania law. *See General Elec. v. United States*, 813 F.2d 1273, 1276 (4th Cir.1987), *cert. granted and judgment vacated on other grounds*, — U.S. —, 108 S.Ct. 743, 98 L.Ed.2d 756 (1988); *LaBarge v. Mariposa County*, 798 F.2d 364, 367 (9th Cir. 1986), *cert. denied*, — U.S. —, 107 S.Ct. 1889, 95 L.Ed.2d 497 (1987); *accord In re Maine Asbestos Litigation*, 772 F.2d 1023, 1027, 1029 (1st Cir.1985), *cert. denied*, 426 U.S. 1126, 106 S.Ct. 1994, 90 L.Ed.2d 675 (1986).

strict liability under the theory of "unseaworthiness" applied with equal force to longshore workers. *See Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). As a result of this judicial expansion of the LHWCA, longshore workers could receive workers' compensation from their employer, and at the same time sue the vessel owner under a separate theory.[9]

In 1972, however, Congress "radically changed the scheme of things" by amending the LHWCA. *Scindia Steam Navigation Co.*, 451 U.S. at 165, 101 S.Ct. at 1621. Under the amendments, longshore workers were guaranteed increased compensation payments, but no longer possessed a right to recover in strict liability for unseaworthiness. In addition, Congress codified the employee's right to sue a vessel owner in negligence; abolished an employer's obligation to indemnify the vessel owner, and extended the LHWCA's coverage to land-based workers engaged in maritime employment. *See id.; Northeast Marine Terminal*, 432 U.S. at 261–65, 97 S.Ct. at 2356–57 (discussing legislative history); *see generally Director, OWCP v. Perini*, 459 U.S. 297, 299, 313, 103 S.Ct. 634, 637, 645, 74 L.Ed.2d 465 (1983) (discussing 1972 LHWCA amendments); *Derr v. Kawasaki Kisen K.K.*, 835 F.2d 490, 492 (3d Cir.1987).

At no point, however, did Congress address whether any of the LHWCA revisions should apply to federal employees. Significantly, although other exceptions from coverage were deleted, the exclusion of federal employees emerged unscathed from the drastic congressional overhaul of the LHWCA. For example, while expanding the category of covered employees, and thereby extending the LHWCA's coverage shoreward, "Congress also removed the provision [in § 903] that precluded federal recovery if a state workmen's compensation remedy were available." *Northeast Marine Terminal*, 432 U.S. at 263 n. 21, 97 S.Ct. at 2357 n. 21; *see also Perini*, 459 U.S. at 314, 103 S.Ct. at 645. Thus, Congress not only broadened the category of employees covered by the statute, it did so by eliminating the exclusion in § 903(a) for employees eligible for state benefits, but not the § 903(a)(2) exclusion for federal employees.

■ Viewed in this context, the 1972 amendments establish that Congress specifically intended the United States's exclusion from liability under the LHWCA to remain as a bar to all aspects of the LHWCA. Accordingly, although § 905(b) would permit a private longshore worker to sue an employer/shipowner for negligence, this liability does not extend to the United States by virtue of the LHWCA's exclusion of federal employees from its coverage.[10] Since Eagle–Picher's third-party suit is based on § 905(b), we hold as a matter of law that its action is barred.

### B. Admiralty Jurisdiction

■ Eagle–Picher nevertheless maintains that the district court should consider its undisputed allegations pursuant to admiralty jurisdiction. In addition to requiring that the injury occured on navigable waters, admiralty jurisdiction demands that the wrong must "bear a significant relationship to traditional maritime activity." *Executive Jet*, 409 U.S. at 268, 93 S.Ct. at 504; *see also Foremost Insur. Co. v. Richardson*, 457 U.S. 668, 674, 102 S.Ct. 2654,

---

9. Longshore workers, however, do not receive a double recovery. When an employer pays workers' compensation, it may then recover that amount from an employee who later collects damages from a negligence action against the shipowner. *See Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 530 n. 5, 103 S.Ct. 2541, 2547 n. 5, 76 L.Ed.2d 768 (1983) (citing *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 269–70, 99 S.Ct. 2753, 2760–61 61 L.Ed.2d 521 (1979)).

10. In any event, Congress's 1984 amendment of § 905(b) has now abolished the dual liability concept for private workers suing their employer/shipowner. *See* 33 U.S.C. § 905(b) (1984 Supp.). As of the effective date of the 1984 amendments, therefore, private employees are prohibited from initiating a negligence suit directly against a vessel owner.

2658, 73 L.Ed.2d 300 (1982). Thus, if the wrong "is only fortuitously and incidentally connected to navigable water," a court cannot assert admiralty jurisdiction. *Executive Jet,* 409 U.S. at 273, 93 S.Ct. at 507. For reasons that follow, we conclude that admiralty jurisdiction does not exist.

■ As a threshold matter, every court of appeals to address the issue—the First, Second, Fourth, Fifth, Sixth, Ninth, and Eleventh—has concluded that asbestos-related claims by land-based ship workers bear no significant relationship to traditional maritime activity. *See generally Petersen v. Chesapeake & Ohio Ry. Co.,* 784 F.2d 732, 736 (6th Cir.1986) (collecting cases). Courts addressing this issue most often examine four factors to determine whether an alleged tort bears a significant relationship to traditional maritime activity: (1) the function and role of the parties; (2) the types of vehicles and instrumentalities involved; (3) the causation and nature of the injury suffered; and (4) traditional concepts of the role of maritime law. *Drake,* 772 F.2d at 1015–16; *Oman v. Johns–Manville Corp.,* 764 F.2d 224, 230 (4th Cir. 1985), *cert. denied,* 474 U.S. 970, 106 S.Ct. 351, 88 L.Ed.2d 319 (1985); *Myhran v. Johns–Manville Corp.,* 741 F.2d 1119, 1121 (9th Cir.1984); *Harville v. Johns–Manville Products Corp.,* 731 F.2d 775, 783–87 (11th Cir.1984).

We find this analysis not only compelling, but also required by our own jurisprudence. More than a decade ago, we adopted this four-part test "for determining whether torts occurring upon navigable waters have a maritime connection." *Edynak v. Atlantic Shipping Inc.,* 562 F.2d 215, 221 (3d Cir.1977) (citing *Kelly v. Smith,* 485 F.2d 520, 525 (5th Cir.1973), *cert. denied,* 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974)), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978).

In *Edynak,* we held that an injury suffered by a longshore worker, serving as a signalman aboard a vessel while the vessel was being unloaded, satisfied the maritime nexus test because the worker was performing a task relating to ship unloading—an activity long associated with admiralty law. *Id.*

■ Although it normally satisfies the threshold "situs" test for admiralty jurisdiction, a shipyard worker's claim based on an asbestos-related injury does not bear a sufficient connection to traditional maritime activity. First, the function and role of the parties does not require application of admiralty law. Although Press, the underlying plaintiff and injured worker, performed his duties on board ship, his skills were essentially land-based. Press performed sheetmetal work in close proximity to operations involving the removal of asbestos-containing insulation. On occasion, he was also required to remove asbestos from insulation-covered piping systems. *See* J.A. at 14 (amended complaint ¶ 30). His skill and training was "linked more with the land than with the sea." *Harville,* 731 F.2d at 785.[11] Thus, Press was not a harbor worker injured while performing the work of a seaman. *See Edynak,* 562 F.2d at 221.

Second, although Press worked on board ship, the "involvement of the ships is at most tangential to the nature" of his tort claim. *See Oman,* 764 F.2d at 231; *Myhran,* 741 F.2d at 1122. Many construction workers perform identical tasks in land-based buildings, and Press's claim would have been the same had he worked in a factory instead of on board ship at the Philadelphia Naval Yard.

Third, the causation and type of injury does not favor invocation of admiralty law. Press suffered respiratory tract injuries caused by exposure to asbestos-based insu-

---

11. Arguably, the function and role of defendant asbestos manufacturers tend to support the assertion of admiralty jurisdiction. Defendants, although land-based, manufactured and marketed their products for use on vessels. Nevertheless, the products were not designed specifically for maritime use. *Oman v. Johns–Manville Corp.,* 764 F.2d 224, 230 (4th Cir.1985), *cert. denied,* 474 U.S. 970, 106 S.Ct. 351, 88 L.Ed.2d 319 (1985); *Harville,* 731 F.2d at 784. In any event, we do not find this aspect of the first factor dispositive.

lation products. Land-based workers suffer the same injuries from identical causes; indeed, the injury and its cause "are far more closely affiliated with the clearly land-based negligence arising in the construction industry generally than with negligence taking place in commerce and navigation on the navigable waters." *Owens–Illinois, Inc. v. United States District Court*, 698 F.2d 967, 971 (9th Cir.1983) (per curiam).

Fourth, when viewed in light of the traditional concept of the role and purpose of admiralty law, Press's claim does not relate to traditional maritime activity. Admiralty law is "designed and molded to handle problems of vessels relegated to ply the waterways of the world ...", such as navigational rules, maritime liens, seaworthiness, cargo damage, and maintenance and cure. *See Executive Jet*, 409 U.S. at 269–70, 93 S.Ct. at 505. None of these concepts support the view that admiralty law is concerned with asbestos-related injuries suffered by sheetmetal workers who happen to perform their jobs on vessels in a shipyard. *See Harville*, 731 F.2d at 785–86.

Accordingly, we conclude that the tort claims forming the basis for Eagle–Picher's cause of action did not bear a significant relationship to traditional maritime activity. The judgment of the district court will be reversed. The case will be remanded to the district court for entry of judgment for the United States.

No costs taxed.